PROVOSTY, J.
In the course of fighting a fire that was inside the second story of a furniture store, the firemen set up a ladder against the sheet iron awning which extended from the building over the sidewalk at the elevation of the second floor, and three of them went up this ladder with the nozzle end of a hose. There was an are light wire of the defendant company four feet five inches above this awning and six feet eight inches from the building; and below it were two other wires. The foremost firemen managed to pass between this top wire and those below it. The third fireman, just as he stepped from the ladder to the awning, was seen to fall down upon the awning, and to be holding the top wire with one hand, while electrical sparks were spitting out at the place where he had hold of the wire. Whether he had stumbled, or slipped, on the steep awning and caught the wire in his fall, or had fallen as the result of having put his hand on the wire, is not known. His companions instantly pulled him off; but he was already dead — electrocuted. The water had just begun to spout from the hose. It was after night, but light enough from the flames and from the street lamps for him to have seen the wires, as his companions had done. The city of Shreveport, as his employer, 'settled with his widow and children her liability to them under the Employers’ Liability Law (Act No. 20, p. 44, of 1914), and deeming that under section 7 of said law she was legally subrogated to whatever right they might have to claim damages from the defendant company, and having also obtained from them an express subrogation, brought the present suit.
An exception of no cause of action based upon the supposed ineffectiveness of the subrogation was sustained below. On appeal to this court, the judgment was reversed; this court holding that, while legal subrogation had not taken place, the contractual subrogation was good as to the widow. 140 La. 1078, 74 South. 559. The question as to the validity of the contractual subrogation of the rights of the children was expressly reserved.
The reason why the court held that the legal subrogation had not taken place was that the said section 7 of the Employers’ Liability Act in making provision for such legal subrogation mentions only the injured *683 employé himself, saying nothing of “dependents.” The decision became final in March, 1917. The Legislature of 1918 (Act No. 38) amended the said section 7, doubtless in view of that decision, by adding after the word “employé” the words “or his dependent”; so that, as the law now stands, the employer who has made a settlement of his liability under said law is subrogated by operation of law not only when the settlement has been with the employé himself but also when it has been with his dependents.
The learned counsel for plaintiff contends that the said amendment controls this case. We think not. The rights of the children 'could not be taken away from them and transferred to the plaintiff by any act of the Legislature. It • would be the divesting of vested rights.
And so far as concerns the contractual subrogation which the mother and tutrix undertook to make for these children, it was nothing more than an alienation of minors’ property without observance of the forms prescribed by law for the alienation of minors’ property; and therefore null. Were the city to fail in the present suit, the judgment would be in no way binding on the minors, who could obtain the annulment of the said attempted transfer, or subrogation, of their rights, and then renew against the defendant company the present suit.
The exception of no cause of action must therefore be sustained in so far as plaintiff’s suit is founded upon the rights of the minors.
On the merits, the case is closely analogous to that of Clements v. Electric Light Co., 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348, where a workman going on a roof to repair it was killed by contact with an insufficiently insulated wire, and the company was held responsible.
[1] Evidence was offered to show that the insulation of wires soon deteriorates under the action of sun and rain, and that therefore it is not commercially possible to keep the wires safely insulated. This was held in the case of Moren v. N. O. R. & L. Co., 125 La. 944, 52 South. 106, 136 Am. St. Rep. 344, not to be a good defense.
There was also some evidence to the effect that the insulation of wires is not for protection, but only for preventing a wasteful escape of the fluid. That view of the matter does not recommend itself to the humanity, not to say the common' sense, of the court.
[2] Another defense is that the fireman was a mere licensee, and therefore had to take the premises as he found them, and abide by the consequences. He may have been a mere licensee in so far as the owner of the furniture store was concerned, and might not have had any right of action against this owner for any injury received as the result of peculiar conditions In or about this building, though even then circumstances might perhaps alter eases; but he certainly was not a licensee with regard to the defendant company who was occupying with its wires the public street. The cases cited by defendant are New Omaha Thompson, etc., v. Anderson, 73 Neb. 84, 102 N. W. 89; Hamilton v. Minneapolis Desk Co., 78 Minn. 3, 80 N. W. 693, 79 Am. St. Rep. 350; Beehler v. Daniels, 18 R. I. 563, 29 Atl. 6, 27 L. R. A. 512, 49 Am. St. Rep. 790; Rennebaker v. San Joaquin L. & P. Co., 158 Cal. 579, 112 Pac. 459, 31 L. R. A. (N. S.) 1099, 139 Am. St. Rep. 202; Griffin v. U. S. Electric L. Co., 164 Mass. 492, 41 N. E. 675, 32 L. R. A. 400, 49 Am. St. Rep. 477; Minneapolis Gen. Elec. Co. v. Cronon, 166 Fed. 651, 92 C. C. A. 345, 20 L. R. A. (N. S.) 816; Memphis Consol. Gas & Electric Co. v. Speers, 113 Tenn. 83, 81 S. W. 595; National Fire Ins. Co. v. Denver Consol. Electric Co., 16 Colo. App. 86, 63 Pac. 949; Cleveland, C., C., etc., Co. v. Baílenteme, 84 Fed. 935, 28 C. C. A. 572; Woodruff v. Bowen, 136 Ind. 431, 34 N. E. 1113, 22 L. R. A. 198; Hector v. Boston Elec. Co., 161 Mass. 558, *685 37 N. E. 773, 25 L. R. A. 554; Sullivan v. Boston & A. R. Co., 156 Mass. 378, 31 N. E. 128; Keefe v. Narragansett Elec. L. Co., 21 R. I. 575, 43 Atl. 542; Hargreaves v. Deacon, 25 Mich. 1; Newark Elec. Co. v. Garden, 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 725; Denison Light Co. v. Patton, 105 Tex. 621, 154 S. W. 540, 45 L. R. A. (N. S.) 303; Cumberland Telephone v. Martin’s Adm’r, 116 Ky. 554, 76 S. W. 394, 77 S. W. 718, 63 L. R. A. 469, 105 Am. St. Rep. 229.
[3] This fireman was in the ordinary discharge of his duties, and was guilty of no negligence. The fact that his two companions ahead of idm saw and avoided this wire does not argue against him. His opportunity for seeing it, or for appreciating at the moment its dangerous character, may not have been as good as theirs. And if even they had failed to observe it, there would have been nothing to wonder at under the circumstances: The imperfect light; the necessary precipitancy of their movements ; the flames inside; the excitement; the insecure footing on the steep awning. The man, for all that is known, may have stumbled and fallen against the wire. And we suspect that as he was stepping from the ladder to the awning the stream of water from the hose had already begun to splash about him.
[4] Other defenses are contributory negligence on the part of the plaintiff city, and estoppel because of the city’s electrician not having condemned the location of this wire, but having, on the contrary, impliedly approved it by not objecting to it. Suffice it to say of these defenses that the city is not suing in her own right, but is simply enforcing the rights of the widow and children of the decedent.
He was 28 years old, in good health, earning $70 a month, and his wife and children were entirely dependent upon him.
Following the Moren Case, supra, the learned trial judge, by whom the case was tried without a jury, allowed for the rights of the widow $5,000. :
Judgment affirmed; defendant to pay the costs of the appeal.
DAWKINS, J., takes no part.