### BROWN v. LILLI.

AUTOMOBILES—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

Pedestrian, about to cross a trunk highway a mile outside of a city, who had view for 1,215 feet easterly down road from which defendant's car approached, waited for one car to pass and, after looking again and seeing nothing, proceeded southerly from west end of parked car to cross pavement *held*, guilty of contributory negligence as a matter of law since she is held to have seen that which was plainly visible even if driver was guilty of negligence.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted June 23, 1937. (Docket No. 131, Calendar No. 39,611.) Decided September 1, 1937.

Case by Alice Brown against Anthony Lilli for damages for personal injuries sustained when struck by an automobile while crossing a highway. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*James R. Golden* and *John A. Wagner,* for plaintiff.

*Clifford A. Mitts, Jr.,* for defendant.

CHANDLER, J.   On August 15, 1935, plaintiff, together with friends, was returning by automobile from a resort near Reed City to her home in Chicago. They left Kalamazoo on highway US 12, which runs in an easterly and westerly direction at the place of the accident in question, and when approximately a mile west from the city of Kalamazoo stopped the car on the gravel shoulder on the northerly side of the road to eat a lunch, the left wheels of the car being about 18 inches from the edge of the pavement. After eating the lunch, plaintiff stepped from the right rear door of the car and walked along the northerly side thereof to the front when she turned to her left and proceeded to cross the road to the Woodlawn Park Grocery on the south side of the road.

Plaintiff claims that before stepping upon the pavement she looked to her left and saw a car coming from the direction of Kalamazoo; that she permitted this car to pass before proceeding; that she then looked to her right and to her left and seeing no vehicles approaching from the west, started across the pavement; that after taking a few steps she cast her eyes downward to see how far she was from the center of the road and then again looked to her left whereupon she saw defendant's car approaching from the east. She claims that when she first

saw defendant's car it was 40 or 50 feet from her and was "zigzagging" down the road and that she attempted to get out of its path but that the car continued to "zigzag" and finally struck her inflicting severe injuries.

At the time of the impact defendant was traveling at a speed of 40 to 50 miles per hour. He testified he was 15 to 20 feet from plaintiff when he first saw her and that he did everything possible to avoid striking her after she was observed by him but he was unable to do so.

Easterly from the point of the accident the road runs down over a hill and the testimony stands undisputed that by actual measurement an automobile coming over the top of the hill from the east is fully visible for a distance of 1,215 feet from where plaintiff attempted to cross.

Motions for a directed verdict were taken for advisement under the Empson act. 3 Comp. Laws 1929, § 14531 *et seq.* Defendant appeals from a denial of a motion for judgment *non obstante veredicto* and a motion for a new trial.

Although some doubt may exist as to whether defendant was guilty of negligence upon the record, the question was submitted to the jury which found for the plaintiff on this issue. We do not pass upon the question but instead will proceed to discuss plaintiff's contributory negligence.

We quote from the testimony of plaintiff:

"*Q.* When you started across that road you knew that it was a highly traveled road, did you not?

"*A.* Yes. But there wasn't any traffic on there but this car that had passed me at the time.

"*Q.* In other words, you had looked to make sure that you could cross in safety and not seeing anything you started across the pavement didn't you?

"*A.*　Yes, I did.

"*Q.*　When you made the observation after this car had passed, how close were you to the pavement?

"*A.*　Oh, I suppose I was about two feet from the pavement.

"*Q.*　So that you can see towards your left as far down as this rise in the hill when you come out of Kalamazoo?

"*A.*　Yes. I could see about 200 feet down. As near as I can remember it was 200 feet.

*Q.*　But as far as your opinion now, that is merely your judgment as to the distance that it was, is it not, that you could see down to that hill?

"*A.*　Yes, as far as I could see.''

Plaintiff's witness, the driver of the car in which she had been riding, testified as follows:

"*Q.*　And what did you observe?

"*A.*　At the time I looked in the rear view mirror I saw two cars approaching from the direction of Kalamazoo.

"*Q.*　From the direction of Kalamazoo going in what direction with reference to your car?

"*A.*　They were going west.

"*Q.*　Now when you first observed those cars could you give us an estimate of about how far they were down the highway when you first observed them?

"*A.*　Well as near as I can say 400 feet.

"*Q.*　Did these cars—how many cars did you see by you referring to?

"*A.*　There was two cars that I saw come over the hill.

"*Q.*　Now do you know whether Mr. Lilli's car was the first car or the second car?

"*A.*　I do not.

"*Q.*　When you saw those two cars back at that distance of about 400 feet—I think you testified—

where was Mrs. Brown when you first observed those cars back there that distance?

"*A.* She had started to cross the road.

"*Q.* She had started to cross the road proceeding from the north side—that is the side you were on —which direction?

"*A.* To the south side of the road.

"*Q.* To the south side of the road. Now when Mrs. Brown was proceeding—while she was proceeding from the north side to the south side of the road, could you tell us about how far Mrs. Brown had got over on the—toward the south side of the road before the impact or at the moment of the impact?

"*A.* I would say she had taken about three steps —three ordinary steps—up toward the center of the road."

The accident occurred in the daytime and the facts display nothing to indicate that plaintiff could not have seen defendant's approaching automobile had she made proper observation before attempting to cross the pavement. On the contrary, it stands undisputed that she could have had a clear unobstructed view of the road and could have seen defendant for a distance of 1,215 feet. Although she testified that she did look and saw nothing, if she looked and failed to see that which was plainly visible, she will be held in point of law to have seen it and guilty of contributory negligence. *Molda* v. *Clark,* 236 Mich. 277; *Neeb* v. *Jacobson,* 245 Mich. 678.

Judgment reversed without a new trial, with costs to defendant.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.