**E. F. HAUSERMAN CO., for Use and Benefit of AETNA CAS. & SURETY CO. v. UNITED STATES.**

No. 9871.

United States District Court
E. D. Michigan, S. D.
Feb. 14, 1952.

Kerr, Scroggie, Lacey & Buchanan, Detroit, Mich., for plaintiff.

Nicholas J. Wagener, Asst. U. S. Atty., Detroit, Mich., for defendant.

PICARD, District Judge.

Action under Section 413.15 Michigan Compiled Laws of 1948 by E. F. Hauserman Company, an Ohio corporation, for the Use and Benefit of Aetna Casualty & Surety Company, a Connecticut corporation, against the United States of America, to recover monies that the Aetna Casualty & Surety Company, Hauserman's insurer, has and must pay John Short, Hauserman's employee, who following an accident elected to come under the Michigan Workmen's Compensation Law.

### Statement of Facts

The employee was injured while putting up a metal wall separating two bays in defendant's tank arsenal, near the top of which bays ran large overhead cranes on tracks about 25 feet above the floor. The

cranes are 8 feet high and 10 feet wide, have a spread the full 80 feet of the bays and operate from one side of the building to the other, a distance of about 2000 feet. For example, the cranes pick up tanks on the east side of the arsenal and lift them to the west side over the tops of other machinery, equipment and the heads of workmen on the ground floor, for final work and transportation. The accident happened on the crane track running along the north partition being erected.

According to the contract between Hauserman and the government and the rules and regulations attached thereto, it was mandatory that the electric current motivating these cranes be shut off in the particular bay in which the men were working; this practice had been followed on the several other bays previously partitioned.

On the day in question, November 9, 1948, the work in the bay where the accident happened had reached the point where practically all that remained to be done was to fasten some bolts and nuts near certain openings where the wheels of the crane ran on the tracks. Early in the morning of that day one of defendant's foremen saw Short and a co-worker, one Adkins, working on the crane track while the crane was operating. He immediately notified them to come down, that they were in a position of danger and that they should not be working there under any circumstances while the power was on, even if the crane was not operating because of the high tension wires near them. Both Short and Adkins refused and asked to have the power turned off until they could complete their work. The government's representative said they couldn't do this as it would stop the manufacture of all the tanks in that bay and idle a thousand men. He informed them that they should do this particular job at night or during the noon hour.

Nevertheless Short and Adkins refused to leave their places on the scaffold and it was then agreed between defendant's representative and Short's foreman that Short and Adkins could continue working but that the crane operator would not only ring the bell that was always supposed to be rung before and while the crane was moving but that the operator would look out of his window and make certain that no one was on the tracks. The signal would always be given so that the men would have time to reach the safety platform suspended above the top of the crane.

The evidence shows that on the day in question Short and Adkins worked in that danger zone at intervals from about eight o'clock in the morning until after two o'clock in the afternoon and had to stop and walk to the safety platform four or five times during that period. Just before two o'clock Short and Adkins had to seek this safety when the crane moved from the east to the west wall which was about 200 feet away from where they were then working. Between that time and the time of the accident the crane bell was not sounded so that both Short and Adkins should have known that unless the operator had violated his orders the crane was just 200 feet away toward the west wall. About 20 minutes after the crane had gone by to the west, Short stepped out through the opening from the north side of the north partition of the bay and onto one of the tracks on which the crane ran. He was then on the south side of the partition facing north and holding one end of a nut and bolt attachment while his co-worker Adkins manipulated the other side.

Short testified that before stepping on the track he looked both ways and saw no crane.

The facts are undisputed that the crane must have been in plain view—not more than 200 feet to the west of where Short then stood.

Short testified that he worked about one and one-half minutes before being struck and this was verified by Adkins, but when timed by a watch to inform the court of their conception of two minutes, Short indicated 15 seconds and Adkins about 28 seconds.

If Short's testimony (15 seconds) is correct, the crane must have been less than 100 feet away from him and moving in his direction when he stepped through the

opening and right in front of it, as the crane admittedly traveled at the rate of five miles per hour or seven and one-half feet every second.

If Adkins' testimony (28 seconds) is to be accepted then the crane must have been just about starting from the west wall when Short stepped on the track.

If two minutes elapsed then the crane would have been standing at the west wall a full minute and a half before starting.

Short and Adkins say they heard no bell and that if it had sounded they would have heard it.

The operator of the crane said there was no one on either track when he got ready to go and that he continuously rang the bell from just before starting until he stopped directly after the accident. His view of the track was clear but he didn't see Short step out. Obviously he had other duties and was not necessarily looking all of the time in the direction where Short would come out onto the track.

The crane operated quietly and the bell when sounded could be heard over any usual noise. In fact there was some testimony that it could be heard all over the plant.

The defendant never produced any one that said he had heard the bell at this particular time except the operator.

This further fact may be important:

Article 10 of the contract between the E. F. Hauserman Company and defendant provides that Hauserman, "shall be responsible for all damages to persons that occur as a result of his (the contractor's) fault or negligence in connection with the prosecution of the work." (Parenthesis supplied.)

Under this clause the government asked that the case be dismissed. However, we held at the trial that Hauserman as the contractor is not a party to this law suit and that if judgment in this case should be in favor of plaintiff it might well be that the government would have its action against Hauserman under the above provision—but not here.

We further held at the trial that both Hauserman and defendant chose to ignore the terms of their own contract and that in doing so both were negligent. Hauserman Company was negligent in knowingly permitting its men to break the rules and regulations promulgated for their own safety, and work in a place of danger, particularly after its attention had been directed to the breach. On the other hand defendant government was also negligent in not enforcing its own rules and regulations while it had the opportunity. We do not maintain that defendant should have shut down that part of the plant. It was important that the building of tanks continue, but the evidence proves that there were plenty of guards and others who could have compelled these men to come down, by force if necessary, and that in choosing to suffer violation of its own contract the government was negligent. In view of the wording of Article 10 above the negligence may or may not affect the right of the government to collect from Hauserman should this judgment be against it, but we hold that as far as the rights of the insurance company are concerned (being the rights of Short as hereinlater determined) the contract had been mutually held in abeyance by the parties who signed it.

### Conclusions of Law

There are only two questions of law for us to decide.

First, having found the Hauserman Company negligent, does that prevent recovery by plaintiff, the company insurer?

The law on this point has been settled in Michigan under the case of Utley v. Taylor & Gaskin, Inc., 305 Mich. 561, 9 N.W.2d 842, 847, wherein the court stated " * * * the statute expressly gives plaintiff as employer the right to enforce, for the benefit of his insurer, the claim of his injured employee against defendant. In other words, plaintiff stands in the shoes of his injured employee."

Then the court went on to say "The test of the liability of defendant to plain-

tiff is whether or not the employee could have held defendant liable for his injuries."

Hauserman of course could not collect from the government if Hauserman were bringing an action on its own account because it was guilty of contributory negligence and the law in the State of Michigan in a tort action of this kind is that not only must the plaintiff prove the defendant guilty of negligence which is the proximate cause of the accident, but the plaintiff must prove himself free from contributory negligence. St. John v. Nichols, 331 Mich. 148, 49 N.W.2d 113; Guye v. Domas, 284 Mich. 654, 279 N.W. 902.

██ However, this same burden rests on Short, which brings us to the second question, to-wit: could Short have collected from defendant government or would he have failed in his suit because he was himself guilty of contributory negligence?

In the State of Michigan one is guilty of contributory negligence if his negligence is any action which contributes to the injury complained of, either by direct consent thereto or participation therein. One must use due care for his own safety and due care has been defined as that degree of care which an ordinarily prudent person would exercise under similar circumstances.

██ Did the employee Short exercise due care commensurate with the danger?

We hold that he did not and for these reasons—

First, he and his co-worker had gotten out of the way of the crane just twenty minutes before the accident happened. The crane was going to the west wall. He knew that it had to return to the east wall because that's where it picked up the tanks. Now he knew also that he had heard no bell since the crane had passed to the west twenty or thirty minutes before and that unless the crane operator had violated the rules he and his crane were still at the west wall less than 200 feet away. He evidently had forgotten this when he started to step out.

Second, he didn't see the crane although he claims he looked in both directions.

If he had looked to the west he couldn't have missed it and if he had seen it and saw that it was standing still then his failure to continue to look might not be a contributory cause to this accident. It might be argued that he could have depended entirely upon being warned. (See Third and Fourth below.) However, he didn't see what was there and in the State of Michigan the law is he is presumed to have seen what was there. Brown v. Lilli, 281 Mich. 170, 274 N.W. 751; Herccg v. Wideman, 290 Mich. 52, 287 N.W. 376.

Whether it was coming towards him then or not he doesn't know, and if his conception of 15 seconds being two minutes is correct it was less than 100 feet away and moving towards him.

Third, the defendant didn't guarantee Short's safety and if he had seen the crane that was there he would naturally have been alerted and kept his eyes on it. He knew he was breaking the rules and should have taken more precaution for his own safety. He would have done this had he seen what was there.

Fourth, Short had deliberately put himself in a place that was dangerous and he knew it. He had no right to depend exclusively on the ringing of the bell and in view of the fact that he didn't see this 80 foot crane that was really a moving floor, one cannot put a great deal of credence in his statement that the bell did not ring. There is as much to suppose that the bell did ring as that it didn't.

We conclude that what really happened was that he stepped out through this opening on the track and looked towards the east where the crane usually came from and didn't look the other way at all. He couldn't have. Otherwise the accident would probably not have happened.

We do not find it necessary to decide whether the Federal Tort Claim Act applies here and we do not find it necessary to determine that Short assumed the extraordinary risk that he had created by his own wrong. We further do not decide the question of the right of the government to escape payment here because of Article 10. That isn't necessary.

It is our holding and finding that Short, as an individual, could not have recovered because he was contributorily negligent. It follows, therefore, that as plaintiff insurance company has no greater right than Short, judgment must be for defendant.