**CYR et al. v. F. S. PAYNE CO.**

**Civ. A. No. 3550.**

United States District Court
D. Connecticut.

May 22, 1953.

Cornelius D. Shea and David Bagley, Hartford, Conn., for plaintiff Cyr.

Marshall Feingold, of Campion & Watrous, Hartford Conn., for plaintiffs Aetna and Gilbane.

Roger Wolcott Davis, P. Corbin Kohn, of Davis, Lee, Howard & Wright, Hartford, Conn., for defendant.

SMITH, District Judge.

### Finding of Facts

1. Plaintiff Odila Cyr is a citizen and resident of East Hartford, Connecticut.

2. Plaintiff Gilbane Building Company, hereinafter referred to as Gilbane, is a corporation organized and existing under the laws of Rhode Island.

3. Plaintiff Aetna Casualty & Surety Company, hereinafter referred to as Aetna, is a corporation organized and existing under the laws of Connecticut.

4. Defendant F. S. Payne Company, hereinafter referred to as Payne, is a corporation organized and existing under the laws of Massachusetts.

5. During the month of November, 1950, Gilbane was carrying on the construction of a monastery and retreat building in Farmington as general contractor for the owners, a religious order.

6. The plans called for the installation of two elevators, one in the monastery proper, one in the retreat house.

7. In March 1950 Gilbane contracted with Payne for Payne to install the elevators called for by the general contract.

8. By November 1950 work had progressed to the point where Payne was engaged in installing elevator cars, cables, bumpers and governors. Other construction in the building was still proceeding including tile setting.

9. The general contract, as well as the prevailing custom in the building trades, required Gilbane to install and maintain sufficient barriers to protect workmen on the job from falling into openings left in the course of construction, including all elevator openings.

10. It was customary for sub-contractors installing elevators upon such a job as the monastery and retreat job in question, to remove protective barriers from elevator openings when necessary to facilitate the elevator installation work.

11. It was customary and contemplated by the subcontract between Gilbane and Payne that Payne's workmen would promptly replace barriers at the elevator openings when the necessity for their removal to facilitate elevator installation work no longer existed.

12. At some time during the workday of November 27, 1950, sufficient barriers

**528**

installed by Gilbane existed to protect workmen from falling into all elevator openings on the job.

13. On November 27, 1950, Payne's men were working in the elevator shaftway of the retreat house at basement level.

14. Before Payne's men left the job after 4:30 p. m. on November 27, 1950, the basement level barrier at the elevator shaftway in the retreat house was removed.

15. The removal was by Payne's men to facilitate work on the elevator installation.

16. The barrier was not replaced prior to 11:00 a. m. on November 28, 1950.

17. On November 28, 1950, Payne's men were working in the shaftway in the retreat house at the third or fourth floor level.

18. On November 28, 1950, prior to 11:00 a. m., none of Payne's men were working on the shaftway in the retreat house at basement level.

19. Sand was piled in a courtyard outside the retreat house.

20. The courtyard was at a level three steps higher than the basement floor.

21. A passageway led in a door from the courtyard down a flight of three steps to a hallway whose concrete floor was approximately 3 feet above the concrete floor at the bottom of the elevator shaftway, upon which a coil spring bumper for the elevator had been installed.

22. As one entered from the courtyard and came down the three steps, the elevator shaftway lay directly ahead, while to the right at the foot of the stairs a doorway opened into a large room known as the refectory whose floor was at the same level as the hallway.

23. Tile cutting machinery and mortar mixing boxes, as well as stock piles of tile and sand were set up in the refectory room.

24. A wooden ramp had been built by Gilbane's carpenters from the doorway to the courtyard leading down to the floor of the hallway, at the lower end of which a large square of plywood was placed as a turning point for wheelbarrows proceeding into and out of the refectory room.

25. The ramp on the stairs consisted of five widths of 2 x 9 inch wood, 16 feet long.

26. The edge of the plywood set at the bottom of the ramp near the elevator opening was approximately 3 feet from the edge of the opening.

27. On November 28, 1950, plaintiff Cyr, a construction laborer who had occasionally served also as a foreman or pusher on construction jobs, a member of the hod carriers' and laborers' union, was hired by Gilbane as a laborer on the monastery and retreat house job at the rate of $64 for a 40-hour week.

28. Plaintiff Cyr started work at 8:00 a. m. November 28, 1950. After carrying material to the second and third floors for part of the morning, he was instructed to wheel sand into the basement to the refectory room to stockpile the sand for mixing into mortar.

29. Plaintiff Cyr had not noticed that the elevator shaft at basement level was without a protecting barrier.

30. It was customary when laborers were wheeling barrows up and down the ramp for the man with an empty barrow to give the right of way to a man with a loaded barrow.

31. After making eight or ten trips bringing sand into the refectory, at about 11:00 a. m. Cyr started out of the refectory and as he turned to start up the ramp saw another laborer starting down the ramp with a loaded barrow which carried a load of some 200 pounds.

32. Cyr stepped backwards and fell into the unguarded elevator pit, sustaining three fractured ribs, a large bruise across the lower back, and a low back strain.

33. Cyr was taken to the hospital for emergency treatment, was discharged and made later periodic visits to doctors for advice on exercise to improve his back condition.

34. The fractured ribs healed without incident, the low back strain continues to bother him and prevents employment at heavy work.

35. He is required to wear a brace for support of the lower back to avoid discomfort.

36. Cyr has been employed since February 1, 1953 as a watchman receiving $82,-16 per week for a week of 9½ hour days.

37. Plaintiff Aetna as compensation insurance carrier for plaintiff Gilbane paid Cyr compensation under the Workmen's Compensation Act of Connecticut, for the period 11/29/50–11/21/52, 104½ weeks at $32 per week, a total of $3,332.57, and paid Cyr's hospital and medical expenses which were reasonable in amount and caused by his injury, in the amount of $202.

38. Plaintiff was incapacitated from available light work for six months from the time of the injury.

39. Plaintiff is 52 years of age and is permanently incapacitated as a result of the injury from work involving heavy lifting. The injury does not handicap him in employment in light work such as his present employment as watchman.

40. Reasonable compensation for plaintiff's injuries, expenses, loss of wages, impairment of earning capacity and impairment of ability to carry on his activities in the same manner as before the accident and caused by the accident is the sum of $8,866.

## Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. The defendant Payne was negligent in removing on November 27, 1950 and failing to replace the barrier protecting the elevator hoistway at basement level in the retreat house.

3. Defendant's negligence was a substantial factor in causing the plaintiff Cyr's injury.

4. Plaintiff Cyr was not guilty of negligence contributing to his injury.

5. Plaintiff Cyr did not assume the risk of injury.

6. Neither Gilbane nor Aetna were actively negligent in failing to replace the barrier.

7. Gilbane was negligent in failing to discover and warn its workman concerning the absence of the barrier prior to 11:00 a. m. November 28th.

8. Gilbane's negligence is not a bar to the recovery by Aetna of the amounts paid under the workman's compensation policy.

9. Plaintiffs are entitled to recover of the defendant the sum of $8,866 and costs. The first $3,534.57 is to be paid plaintiff Aetna, the balance to plaintiff Cyr.

## Discussion

The principal factual questions presented are, first, the nature of the ramp construction, whether it was placed on a trestle in the hallway as Gilligan testified, or flush with the hallway floor as the other witnesses recalled it. While Gilligan seemed a more reliable witness in most respects, the accounts of the nature of the fall and of the use of the plywood piece inclined the scales by a slight margin against Gilligan's recollection of the trestle construction. The finding is therefore that the ramp rested on the hallway floor.

Since the defendant put in no evidence, we are left with what inferences can be drawn from the testimony of plaintiff's witnesses and from the defendant's answers to interrogatories to determine whether it has been established by a fair preponderance of the evidence that the defendant's employees removed the barrier and failed to replace it.

There is evidence in the answers to interrogatories that defendant's employees were working on the job on the 27th.

Hoar testified that he saw two men in the base of the shaft before dinner on the 27th, although he admitted that on his deposition taken long before he had testified that he did not see anyone working on the elevator at basement level. Gilligan had them working in the well for two weeks prior to the accident but not every day. On cross-examination it was his recollection that he did not see any men working in the shaft the day before the accident. There is testimony by Gilligan that the general contractor Gilbane's work in the shaft on the fire hose opening was three weeks before the accident.

Birmingham, on direct, testified to the presence of elevator men in the shaft on the 27th, the day before the accident, when

he left after 4:30 p. m., but admitted on cross that on his deposition he testified that he didn't recall seeing the elevator men the day before the accident. The direct testimony, therefore, that the elevator men were in this shaft the day before the accident at the basement level is very much discredited.

We do know, however, from Payne's own admissions, that elevator men were working in the building on the elevators on the day before the accident, as well as on the day of the accident. Payne has offered no witnesses, although presumably, in the absence of evidence otherwise, they are available to it, to establish whether or not its men were in the shaftway in question at basement level on the 27th doing work which required the removal of the barrier.

Should we consider therefore that the unfavorable inference to be drawn from failure to call witnesses within Payne's control sufficiently bolsters the testimony as to the present recollection of the witnesses for the plaintiff, so that we can say that it is more probable than not that Payne's men were in the shaftway in question at basement level on the 27th doing work which required the removal of the barrier?

In addition to these dubious recollections, of course, we do have evidence that the elevator men were working during the period which included the 27th in the area in question, and the evidence as to the custom of their removal of such barriers.

From all the evidence it appears more probable than not that Payne's men were working in the shaftway in question at basement level on the 27th and that they removed the barrier.

■ Was Cyr himself contributorially negligent? He had passed the elevator opening some eight or ten times in the hours preceding his fall. He might have observed the absence of a barrier during that time. He did not do so. In view of the evidence of the customary barriers, which custom he must in his experience have known about, he was entitled to rely upon some protection. There is no evidence that the absence of the barrier was brought to his attention before he fell. His backward step un-der the circumstances was not a lack of ordinary care. A fortiori, he cannot be held to have assumed a risk of which he had no actual or constructive knowledge.

Gilbane may perhaps be held to have been on a different footing as regards notice of the absence of the barrier, however. If we are to believe the testimony of its employees, the barrier was missing at the end of work on the 27th and had not been replaced by the time Cyr fell at 11:00 a. m. on the 28th, or possibly some time between 9:30 a. m. and 11:00 a. m. since there is a conflict as to the time Cyr fell. Gilbane had been warned by Aetna to keep a sharp watch on Payne for the very dereliction which caused Cyr's injury, and there is no evidence of any effort by Gilbane to inspect the shaftways to see if the barriers were still up before sending a new employee into the area. This does not make Gilbane's negligence active in contrast to a passive negligence on the part of Payne if we find that Payne's negligence consisted in removing the barrier and failing to replace it seasonably. It does, however, make Gilbane a joint tort-feasor.

■ The amount recovered by Cyr from Aetna does not relieve Payne from liability to Cyr for the full amount of damages, regardless of the fact that Cyr has received compensation from Aetna. Stulginski v. Cizauskas, 1939, 125 Conn. 293, 5 A.2d 10. Whether Gilbane's own negligence bars it from a share in the recovery, however, is another question, the answer to which must depend upon the meaning of the statute giving it the right to sue.

Section 615[a] 1949 Supp. to C.G.S. reads as follows:

"When any injury for which compensation is payable under the provisions of this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other

person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or by award having become obligated to pay, compensation under the provisions of this chapter, may bring an action against such other person to recover any amount that he has paid or by award has become obligated to pay as compensation to such injured employee. If either such employee or such employer shall bring such action against such third person, he shall forthwith notify the other, in writing, by personal presentation or by registered mail, of such fact and of the name of the court to which the writ is returnable, and such other may join as a party plaintiff in such action within thirty days after such notification, and, if such other shall fail to join as a party plaintiff, his right of action against such third person shall abate. In the event that such employer and employee shall join as parties plaintiff in such action and any damages shall be recovered, such damages shall be so apportioned that the claim of the employer shall take precedence over that of the injured employee, and, if the damages shall not be sufficient, or shall be only sufficient to reimburse him for the compensation, which he has paid, or by award has become obligated to pay, with a reasonable allowance for an attorney's fee to be fixed by the court and his costs, such damages shall be assessed in his favor; but, if the damages shall be more than sufficient to reimburse him, damages shall be assessed in his favor sufficient to reimburse him for the money he has paid, with a reasonable allowance for an attorney's fee to be fixed by the court and his costs, and the excess shall be assessed in favor of the injured employee. Such allowance for an attorney's fee shall include services rendered before the compensation commissioner, and in no case shall be less than the sum of twenty-five dollars. No compromise with such third person by either employer or employee shall be

binding upon or affect the rights of the other, unless assented to by him. The word 'compensation,' as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also sums paid out for surgical, medical and hospital services to an injured employee and the * * * four hundred fifty dollar burial fee provided by law."

Thus, the words of the statute seem to allow recovery by the employer regardless of its own concurrent negligence.

There appears to be no Connecticut case directly in point. Nevertheless, the implication in a Connecticut case seems to strengthen this interpretation. Pratt, Read & Co. v. New York, N. H. & Hartford R. Co., 1925, 102 Conn. 735, 736, 741, 130 A. 102, 104, was an appeal by plaintiffs, employee and employer, from a defendant's verdict in the trial court. In the course of an opinion reversing on other grounds, the court stated:

"Error is assigned 'in failing to charge the jury upon the subject of concurrent negligence as applied to the facts disclosed by the evidence.' Neither in their complaints nor in their requests to charge had the plaintiffs claimed that the accident resulted from the concurrent negligence of defendant and Merrill, driver of the bus. Nor did the facts claimed to have been proven by the plaintiffs make it incumbent upon the court, of its own motion, to have instructed the jury as to the possibility of the claim. It does appear that defendant offered evidence to prove, and claimed to have proven, that the accident happened through the negligence of Merrill, the driver of the bus, but defendant, of course, was not making the claim that the accident happened through the concurrent negligence of it and the driver. While the facts claimed to have been proven would have made it possible for the plaintiffs to have made this claim, or for the court of its own motion to have presented it to the jury, we would be

quite unwilling to hold the court in error, under the circumstances of this case, for failing to present to the jury a claim of law not made by the plaintiffs, and not necessarily required by the evidence before the jury."

Since the bus driver was an employee of plaintiff-employer in the case, there may be an implication that the court assumed that concurrent negligence on the part of the employer would not have barred the employer from recovery.

Authority in other states is split about two-to-one in favor of the view that the employer's concurrent negligence does not bar him from recovery via subrogation against the negligent third-party tort-feasor. Wisconsin, Michigan, Nebraska, Iowa, California, and Louisiana hold this view. North Carolina, Minnesota, and Pennsylvania hold the contrary view.

(1) Pro: Fidelity & Casualty Co. v. Cedar Valley Elec. Co., 1919, 187 Iowa 1014, 174 N.W. 709; Otis Elev. Co. v. Miller & Paine, 8 Cir., 1917, 240 F. 376; Graham v. City of Lincoln, 1921, 106 Neb. 305, 183 N.W. 569; Utley v. Taylor & Gaskin Inc., 1943, 305 Mich. 561, 9 N.W.2d 842; Clark v. Chicago, M. St. P. & P. R. Co., 1934, 214 Wis. 295, 252 N.W. 685; Milosevich v. Pacific Elec. Ry. Co., 1924, 68 Cal.App. 662, 230 P. 15; City of Shreveport v. Southwestern Gas & Elec. Co., 1919, 145 La. 680, 82 So. 785.

(2) Contra: Thornton Bros. Co. v. Reese, 1933, 188 Minn. 5, 246 N.W. 527; Essick v. City of Lexington, 1951, 233 N.C. 600, 65 S.E.2d 220; Maio v. Fahs, 1940, 339 Pa. 180, 14 A.2d 105.

As regards the right of the insurer to recover, there is no Connecticut case deciding the point. United States Fidelity and Gua. Co. v. New York, N. H. & H. R. Co., 1924, 101 Conn. 200, 207, 125 A. 875, raised the question but did not settle it, since the case was decided upon other grounds.

Fidelity & Casualty Ins. Co. v. Sears, Roebuck & Co., 1938, 124 Conn. 227, 199 A. 93, 117 A.L.R. 565, involved suit by employer H and H's compensation carrier against Sears for reimbursement. H was employed by Sears to carry merchandise, using his own trucks and employees to do so. H's agent, X, was injured through the negligence of Sears. A compensation award against H in favor of X was paid by Fidelity. X had brought suit against Sears, but Sears had successfully defended on grounds it was a principal employer under the Act. On demurrer to the complaint, it was held: (1) H's liability was primary, and Sears' liability as principal employer was secondary only; (2) neither H nor Fidelity as the real party in interest was entitled to relief under their complaint on the ground of exoneration, indemnity, or contribution; (3) as there was no privity of contract between H and Sears relating to compensation, or any direct obligation therefor from Sears, growing out of the contract or relation between X and Sears, and as neither an act by Sears with a fraudulent and malicious design to injure H nor one with actual intent to injure him in his contractual relation with X was set forth, the complaint did not allege a valid cause of action based on tort.

The Fidelity case is set out in some detail because Appleman, (Sec. 4954) cites it for the proposition that Connecticut does not allow subrogation by the insurance compensation carrier against the negligent third party. The case *holds* only that neither the immediate employer or his compensation carrier have a cause of action against a principal employer. It is hard to believe that the court would refuse to allow recovery to the compensation carrier in a case where the employer has a valid cause of action against a third-party tort-feasor not an employer of the injured party.

Since Gilbane's (and through it Aetna's) right to reimbursement is considered to be based upon the Workmen's Compensation Act rather than solely upon the equitable doctrine of subrogation, or any equitable claim to contribution, it would appear that Connecticut courts would not hold Gilbane's concurrent negligence a bar to Aetna's recovery of compensation paid Cyr, in this action for Payne's negligence causing Cyr's injury. cf. Stulginski v. Cizauskas, 1939, 125 Conn. 293, 5 A.2d 10.

While Aetna is entitled to recover its expenditures under the Act, if the re-

covery is sufficient in amount, the finding of the Commissioner as to disability is not binding on the defendant here.

The burden is on the plaintiff to establish the loss of wages suffered as a result of the accident, as an element of his damages. His own testimony was vague and unconvincing. His doctor's testimony indicated he was available for light work by March of 1951. One question is how long thereafter should it have taken him to obtain employment had he made reasonable efforts in that direction. He found employment within a short time after the compensation payments were stopped. The period of total disability caused by the accident may be found to be six months.

Judgment may be entered for the plaintiffs to recover of the defendant the sum of $8,866 and costs, the first $3,534.57 to be paid the plaintiff Aetna, the balance to plaintiff Cyr.