## 17702

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellant, and Evalene McCarley Lyda Pruitt, as Administratrix of the estate of C. Earl Lyda, Plaintiff-Respondent, v. R. A. ODOM, E. R. Watson and One 1955 Mack Truck, of whom E. R. Watson and One 1955 Mack Combination Truck are, Defendants-Appellants.

(116 S. E. (2d) 22)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Defendants-Appellants,*

*Messrs. Love, Thornton & Arnold,* of Greenville, *for Plaintiff-Appellant,*

*John C. Williams, Esq.,* of Spartanburg, *for Plaintiff-Respondent,*

August 23, 1960.

OXNER, Justice.

About 7:40 on the morning of March 1, 1956, a pickup truck owned by Y. C. Ballenger Electrical Contractors and driven by C. H. Rogers, one of its employees, collided with a tractor-trailer unit owned by E. R. Watson and driven by R. A. Odom, one of his employees, at a point on the Greenville-Spartanburg highway near the entrance to the Winn-Dixie Warehouse. As a result of said accident, Earl Lyda, another employee of Y. C. Ballenger Electrical Contractors, who was riding in the rear of said pickup truck, received injuries from which he died shortly thereafter.

Death benefits under the Workmen's Compensation Act were duly paid to the widow and four minor children of Earl Lyda by the Indemnity Insurance Company of North America, the insurance carrier for Y. C. Ballenger Electrical

Contractors. Thereafter this action was brought by the administratrix of the estate of Earl Lyda and the Indemnity Insurance Company of North America against Odom, Watson, and the tractor-trailer to recover damages in the sum of $100,000.00 for the alleged wrongful death of Lyda. It was alleged in the complaint that the action was prosecuted for the benefit of the insurance carrier to the extent of the amount which it had paid under the Workmen's Compensation Act, and for the benefit of the widow and children to the extent of any recovery exceeding said amount.

On the trial of the case, plaintiffs, at the conclusion of the testimony, were permitted to take a voluntary nonsuit as to Odom, leaving Watson and the tractor-trailer as the sole defendants. In addition to being required to find a general verdict, the jury was instructed to determine the following special issue: "Was the death of C. Earl Lyda caused or brought about through contributory negligence or contributory willfullness by C. H. Rogers, the driver of the pickup truck in which the deceased was riding?"

The foregoing question was answered by the jury in the affirmative and a general verdict found in favor of the plaintiffs for $60,000.00 actual damages. An order was thereafter filed wherein the Court held that the finding on the special issue barred any recovery by the insurance carrier and accordingly directed that the amount paid by it be deducted from the verdict and judgment entered against the defendants for the balance.

The plaintiff Insurance Company has appealed from that portion of the order of the Circuit Judge holding that the contributory negligence on the part of the employer barred its right to recover the compensation paid. By numerous exceptions the defendants attack the entire judgment. There is no appeal by the administratrix.

We shall first discuss the legal effect of the finding of the jury that Rogers was guilty of contributory negligence. Such negligence, of course, must be imputed to his employer. The

jury was instructed that contributory negligence on the part of the employer would not be a complete defense but would only constitute a bar, *pro tanto,* to the recovery of compensation paid by the insurance carrier. This is the view advanced by the administratrix on this appeal. The plaintiff Insurance Company contends that upon the payment of the award of the Industrial Commission, the entire cause of action for wrongful death was assigned to it unimpared and that the defendants are liable for the full amount of the damages sustained by Lyda's dependents, irrespective of the contributory negligence of the employer. Defendants contend that the contributory negligence of the employer constitutes a complete bar to any recovery. They say that the payment of the award by the Industrial Commission operated as an assignment to the insurance carrier of the entire cause of action stated in the complaint; that the Insurance Company is the only real party plaintiff; and that the holding of the Court below that contributory negligence only constituted a bar *pro tanto* has the effect of splitting the cause of action, which cannot be done.

Section 72-122 of the 1952 Code permits an employee having a right to recover damages against a person other than his employer, to "institute an action at law against such third person before an award is made under this Title and prosecute it to its final determination." But under the terms of Section 72-123, "either the acceptance of an award under this Title or the procurement and collection of a judgment in an action at law shall be a bar to proceeding further with the alternate remedy."

Section 72-124 provides that an acceptance of an award for compensation "shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other person for such injury or death and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative the legal

liability of such other person. * * *" Section 72-125 requires that any amount collected by the employer in excess of the amount paid by him be held for the benefit of the injured employee or other person entitled thereto and forbids any compromise settlement by the employer "in the exercise of his right of subrogation without the approval of the Commission being first had and obtained."

Under the terms of Section 72-126, whenever an employer or his carrier has become subrogated to the right of an employee to recover damages against a third party and refuses to bring an action against such third party for three months after being requested to do so by the employee, such employee "may bring an action in his own name and for his own benefit against such third party."

Section 72-127 reads: "The amount of compensation paid by the employer or the amount of compensation to which the injured employee or his dependents are entitled shall not be admissible as evidence in any action brought to recover damages."

Under the terms of Section 72-422, when the compensation is paid by an insurance carrier, such carrier becomes "subrogated to all the rights and duties of the employer and may enforce any such rights in its own name or in the name of the injured employee or his personal representative."

The holding of the Court below that a third party may plead and prove the independent concurring negligence of the employer as a bar, *pro tanto,* to the recovery of compensation paid by the employer or insurance carrier is sustained by several decisions: *Thornton Bros. Co. v. Reese,* 188 Minn. 5, 246 N. W. 527; *Alaimo v. DuPont,* 11 Ill. App. (2d) 238, 136 N. E. (2d) 542; *Lovette v. Lloyd,* 236 N. C. 663, 73 S. E. (2d) 886. This was the construction placed upon our own Act by Chief Judge Wyche in *American Casualty Co. of Reading, Pa. v. South Carolina Gas Co.,* D. C., 124 F. Supp. 30. These courts hold that it would be unjust and inequitable to permit an employer or his insurance carrier

to recover compensation for injuries sustained in an accident to which the negligence of the employer contributed. They say that the provision subrogating an employer or his insurer to an employee's legal right in his cause of action is based upon equitable concepts and that an employer or his carrier who seeks reimbursement from a third party should be made susceptible to a demand in equity that he, himself, be free from fault. In *Lovette v. Lloyd, supra,* the Court said [236 N. C. 663, 73 S. E. (2d) 891]: "It is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer." But the overwhelming weight of authority is to the effect that under provisions similar to those contained in our Workmen's Compensation Act, the contributory negligence of the employer constitutes no defense to an action brought by him or his carrier against a third party to recover compensation paid. *Fidelity & Casualty Co. v. Cedar Valley Elec. Co.,* 187 Iowa 1014, 174 N. W. 709; *Graham v. City of Lincoln,* 106 Neb. 305, 183 N. W. 569; *Utley v. Taylor & Gaskin, Inc.,* 305 Mich. 561, 9 N. W. (2d) 842; *Clark v. Chicago, M., St. P. & P. R. Co.,* 214 Wis. 295, 252 N. W. 685; *Milosevich v. Pacific Elec. Ry. Co.,* 68 Cal. App. 662, 230 P. 15; *City of Shreveport v. Southwestern Gas & Elec. Co.,* 145 La. 680, 82 So. 785; *General Box Co. v. Missouri Utilities Co.,* 331 Mo. 845, 55 S. W. (2d) 442; *Williams Bros. Lumber Co. v. Meisel,* 85 Ga. App. 72, 68 S. E. (2d) 384; *Johnson v. Willoughby,* Tex. Civ. App., 183 S. W. (2d) 201; *Coleman v. Hamilton Storage Co.,* 235 Ala. 553, 180 So. 553; *Employers Mut. Liability Ins. Co. of Wisconsin v. Refined Syrups Sales Corp.,* 184 Misc. 941, 53 N. Y. S. (2d) 835; *Otis Elevator Co. v. Miller & Paine,* 8 Cir., 240 F. 376; *United Gas Corp. v. Guillory,* 5 Cir., 206 F. (2d) 49; *Marciniak v Pennsylvania Railroad Company,* D. C., 152 F. Supp. 89; *Cyr v. F. S. Payne Co.,* D. C., 112 F. Supp. 526; *E. F. Houserman Co., for Use and Benefit of Aetna Cas. & Sur. Co. v. United States,* D. C., 103 F. Supp. 358.

In this Court the question is one of first impression. After careful consideration, we have concluded that the majority view is the sounder one. It is true, as counsel for defendants suggests, that upon payment of the award, the entire cause of action for the alleged wrongful death of Lyda was assignd to the insurance carrier and the representative of his estate retained no right of action for further damages. *Dawson v. Southern Railway,* 196 S. C. 34, 11 S. E. (2d) 453; *Fuller v. Southern Electric Service Co.,* 200 S. C. 246, 20 S. E. (2d) 707, 710. But we think the insurance carrier took over unimpaired the whole cause of action against the defendants and was thus enabled to maintain any cause of action which Lyda's administratrix could have maintained had no such assignment been made. In *Fuller v. Southern Electric Service Company, supra,* the Court said: "The Compensation Law assigns the injured person's right of action against a tort feasor to the employer or to the employer's insurer and enables the assignee to maintain the action which the employer could have maintained had no such assignment been made." Had this action been brought by the administratrix alone, contributory negligence on the part of Rogers would have constituted no defense. Where the injured party brings suit against one tort feasor, the fact that another party's negligence contributed to the injury does not relieve the party sued of liability. Here it is the rights of Lyda's dependants which are being enforced and the sole test of the defendants' liability is their liability to such dependants.

We find nothing in our statute abridging or restricting the common law action assigned to the insurance carrier. It makes no exception to the subrogated right of the employer or his carrier to recover against the third party. As stated in *General Box Company v. Missouri Utilities Co., supra,* 331 Mo. 845, 55 S. W. (2d) 442, 445: "The sole test of liability of the third party to the subrogated employer is the liability of the third party to the injured servant or his dependants, and it clearly is no defense to the third party's

liability for his own negligence to show that another party, his employer, was also negligent concurrently and contributing thereto. Moreover, the employer is by this statute subrogated to the rights of the injured employee, or his dependants in case of death, against the negligent third party, and the law certainly is that the right of an injured party or his dependants to recover damages against a party whose negligence caused the injury is not defeated or impaired by the fact that another party's negligence also aided or contributed to the injury."

The foregoing construction does not place an additional burden on the third party. "To hold that in such an action the defendant is liable for the full amount of the damages sustained by the employee, irrespective of the contributory negligence of the employer, is casting no burden upon the negligent third person greater than that borne by him prior to the enactment of the statute. Before the passage of any workmen's compensation acts a negligent third person was responsible for all damages sustained through his negligence to one in the employ of another, and the fact that the employer was liable for such injury jointly with a third person was no defense to such an action in whole or in part, nor could it be made the basis of any proceeding against the employer for contribution towards payment of the judgment recovered by the employee against the third person." *Milosevich v. Pacific Electric Co.*, 68 Cal. App. 662, 230 P. 15, 18.

The employer in this case and the defendants are not joint tort feasors as to decedent. The liability of the employer under the Workmen's Compensation Act arises out of contract created by law and not out of any theory of tort, and such liability is not concerned with any negligence on the part of the employer or employee. There is no common liability of the employer and the defendants to Lyda's dependents even though their concurring negligence caused his death.

If, as counsel for defendants seem to think, the construction we have adopted results in some instances in an in-

justice, the remedy must come from the Legislature. We are not at liberty to weigh the equities of the parties. The right given the employer or his insurance carrier under the Act is by statutory assignment rather than strict subrogation and, therefore, does not depend upon equitable principles.

It follows that the Court below erred in holding that the contributory negligence of Rogers barred recovery by the insurance carrier. The exceptions by the Indemnity Insurance Company of North America are sustained.

The next question is whether the negligence of Rogers should be imputed to Lyda, the decedent, under the doctrine of common enterprise. Defendants contend that the facts established this defense as a matter of law, or at least required the submission of this issue to the jury. The Court below concluded that the decedent did not have any measure of control over, or responsibility for, the acts of Rogers in driving and, therefore, held as a matter of law that any negligence of Rogers could not be imputed to him.

The facts material to this issue are undisputed. The principal place of business of the Y. C. Ballenger Electrical Contractors was in Spartanburg, South Carolina. For four or five years this concern had been engaged on a large job in Greenville for the Duke Power Company. It was customary for the employees on this project to report for work in Spartanburg and travel to Greenville in a truck furnished by their employer, which apparently paid all costs of operation. On the morning of the accident, six of them, including the decedent, met in Spartanburg just before seven o'clock and at the time of the accident were proceeding to Greenville in a pickup truck. Rogers, who was the foreman of the crew, was driving. There is testimony to the effect that on several occasions other employees drove this truck but there is none that it was ever driven by decedent, who was only an apprentice lineman, a position inferior to that of Rogers.

Defendants contend that the fact that the occupants of this truck were fellow servants of a common master riding to-

gether in a vehicle in the course of their employment made them participants in a joint enterprise. It is said that they were then in association in the use of a vehicle for a purpose in which they had a common interest, and any negligence on the part of the driver must be imputed to the other employees. There are a few decisions, including *Lacey v. Heisey,* 53 Ohio App. 451, 5 N. E. (2d) 699, cited by defendants, which sustain this view. But the great weight of authority is to the contrary. *Kocher v. Creston Transfer Company,* 3 Cir., 166 F. (2d) 680; *Melville v. State of Maryland,* 4 Cir., 155 F. (2d) 440; *Veek v. Tacoma Suburban Lines,* 49 Wash. (2d) 584, 304 P. (2d) 700, and cases therein cited. Comment (d) to Section 491, Restatement, Torts, is as follows: "The fact that the plaintiff and the driver are fellow-servants of a common master and are both acting in the course of their master's employment and in furtherance of his business does not make them participants in a joint enterprise, and this is true irrespective of whether the vehicle is owned by the master, the fellow-servant driver or by the plaintiff himself."

But we are not required now to pass upon this conflict of authority, for here Rogers was decedent's superior and the vice-principal or alter ego of Y. C. Ballenger Electrical Contractors. *Lewis v. Trawick,* 234 S. C. 415, 108 S. E. (2d) 680. While there doubtless was a common purpose on the part of all of these employees, the decedent certainly had no voice in the control of this truck, nor did he have an equal right with the driver to direct and govern its movements, which is an essential requirement of the doctrine of common enterprise. *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742; *Rock v Atlantic Coast Line Railway Company,* 222 S. C. 362, 72 S. E. (2d) 900; *Bolt v. Gibson,* 225 S. C. 538, 83 S. E. (2d) 191. The Court below correctly held that the negligence of Rogers could not be imputed to the decedent.

It is next contended that the decedent himself was guilty of contributory negligence. The trial Judge held that there was no evidence warranting the sub-

mission of this issue to the jury. The claim of defendants seems to be that the dededent placed himself in a position in the truck where he could not observe the road ahead and thereby entrusted his safety absolutely to the driver.

The truck in which these employees were riding had a tin top, canvas sides, with the rear and front ends made of plywood in which there was a small window. On the morning in question, the canvas sides were rolled down because of cold weather. There were two employees on the front seat of the cab with Rogers. The decedent and two other employees were sitting on a board at the rear of the body of the truck with their backs to the driver. In order to look in the direction in which the truck was moving, it would have been necessary for the decedent to have turned and looked through a small glass.

> There can be no doubt of the rule that a passenger in a motor vehicle must use ordinary care for his own safety and "may not abandon the exercise of his own faculties and entrust his safety absolutely to the driver, regardless of the imminence of the danger, or the visible lack of ordinary care on the part of the driver to avoid harm." *Funderburk v. Powell, supra,* 181 S. C. 412, 187 S. E. 742, 749. But as there pointed out, "in the absence of any fact or circumstances indicating that the driver is incompetent or careless, an occupant of a motor vehicle is not required to anticipate negligence on the part of the driver."

There is no evidence here that decedent had any reason to doubt the competency of Rogers as a driver. Nor can it be said that he was negligent in selecting the place which he occupied in the truck. He could not have ridden on the front seat with the driver because there was no room. He had to ride in the body of the truck where there was little or no opportunity for observing the road ahead. It has been held "that a passenger is not under the duty to ride in every circumstance in such position in the vehicle that he can observe the road ahead and warn the driver of danger." *Hamil-*

*ton v. Boyd,* 218 Iowa 885, 256 N. W. 290, 291. We agree with the trial Judge that the record is barren of any evidence of negligence on the part of decedent.

Error is assigned in refusing to give an instruction requested by defendants relating to sole negligence on the part of Rogers. When the Court excused the jury at the conclusion of the charge and invited suggestions, counsel for defendants requested that the Court "charge is to the sole negligence of Mr. Rogers, the driver of the pickup truck, if the jury so finds, constitutes a complete defense." In refusing this request, the Court stated that it was encompassed within the instructions already given. An instruction to this effect may have been advisable, but we do not believe the jury was misled by its omission. In the main charge the Court fully defined and explained negligence and proximate cause, and on three or four occasions the jury was clearly instructed that no recovery could be had unless the plaintiffs proved by the preponderance of the evidence that defendants were negligent in one or more of the specifications alleged in the complaint and that such negligence was the proximate cause of the death of the decedent. From these instructions, the jury must have clearly understood that liability could not be founded upon the sole negligence of Rogers. Their finding of actionable negligence on the part of defendants eliminated, as a practical matter, any question of sole negligence on the part of anyone else. We find no reversible error in the refusal of defendants' request.

We now come to the exception relating to argument of counsel. Just preceding the arguments, the attorneys for plaintiff, in the absence of the jury, multiplied on a blackboard the figure 58, the alleged weekly wage of decedent, by 52, which gave a product of 3,016, his alleged annual wage, which was then multiplied by 35.15, his years of life expectancy under the mortality table, giving a product of $106,112.60. (While immaterial, the calculator made a slight mistake. The total should have been $106,012.40.) From this tabulation, plaintiffs' counsel were permitted, over

defendants' objection, to argue that the beneficiaries sustained a pecuniary loss of $106,112.40. Defendants claim that the argument based on this computation was improper and highly prejudicial because it was without evidentiary support and amounted to the introduction of evidence. They say that the widow of decedent remarried six months after his death and ceased to be a dependent (she married a Mr. Pruitt on September 22, 1956); and that while decedent earned $58-.00 a week when working, due to weather conditions and other circumstances, he was unable to work full time.

In support of the foregoing contention, counsel for defendants call our attention to an annotation in 60 A. L. R. (2d) beginning on page 1347, from which it appears that in a number of jurisdictions the courts refused to permit counsel in personal injury damage suits to suggest monetary mathematical formulas to a jury for the computation of compensation for pain and suffering. These courts say such suggestions have no foundation in the evidence, and import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis and constitute an unwarranted intrusion into the domain of the jury.

We do not think the decisions relating to the use of a blackboard in making per diem or other mathematical computation of the amount to be awarded for pain and suffering control the question now presented. The assessment of damages for pain and suffering involves much more speculation than fixing compensation for loss of support. The recent case of *Cross v. Robert E. Lamb, Inc.*, 60 N. J. Super. 53, 158 A. (2d) 359, cited in oral argument by defendants' counsel, is more to the point. But there the facts differ from those in the instant case in several material particulars.

In *Johnson v. Charleston & Western Carolina Railway Co.*, 234 S. C. 448, 108 S. E. (2d) 777, 785, an action for alleged wrongful death, counsel for plaintiff multiplied on a blackboard the decedent's annual income by his life expectancy and used it in his argument as a basis for the

pecuniary loss sustained by the beneficiaries. Defendant's counsel made no contention that this use of the blackboard was improper. Their only contention was that the jury should have been instructed that the calculations made on it should not be considered as evidence. We were, therefore, not called upon to determine the question now presented. However, the following general observation was made: "There is no impropriety in counsel's use of a blackboard, during his argument to the jury, for the purpose of fairly illustrating points that are propertly arguable. * * * Calculations made, or diagrams drawn, thereon are of course not evidence. Like statements of counsel in oral argument, they should have reasonable foundation in the evidence or in inferences fairly arguable from the evidence. Just as oral argument may be abused, so may such visual argument; and its abuse may be so flagrant as to require a new trial. Control of the arguments of counsel, with regard to the use of such visual aids, as with regard to oral statements, rests in the sound discretion of the trial judge."

We think the use of the blackboard here substantially complied with the foregoing rule. At least it cannot be said there was a manifest abuse of discretion on the part of the trial Judge in permitting counsel to make this computation and use it in argument. It does not appear that the figures are wholly unsupported by the evidence. The mortality table was introduced in evidence without objection, so was the testimony relating to the earnings of the decedent. It is true that the widow remarried, but the decedent also left as dependents some minor children. The contingencies now mentioned by counsel for defendants were doubtless advanced in argument and from the size of the verdict evidently given proper weight by the jury. As stated by the trial Judge, while the argument made by counsel for plaintiffs might "not fully withstand the scrutiny of reason", it did "not amount to the introduction of evidence for it comes from the testimony and is not derived from speculation and conjecture."

Finally, it is contended that the verdict is against the weight of the evidence and the amount is so grossly excessive as to indicate that it was the result of passion, prejudice and caprice. There is abundant evidence to sustain liability. The amount awarded is not excessive.

The exceptions by the Indemnity Insurance Company of North America are sustained. Those of defendants are overruled. That portion of the order of the trial Judge reducing the verdict by the amount of compensation paid is reversed but in all other respects is affirmed. The case is remanded for entry of judgment in favor of plaintiffs for the full amount awarded by the jury with interest and costs.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.