TEXAS CITIES GAS COMPANY V. N. P. DICKENS ET AL.

No. 7944. Decided January 20, 1943.
Rehearing overruled February 24, 1943.
(168 S. W., 2d Series, 208.)

434

*Darden & Burleson,* of Waco, for petitioners.

A city fireman while acting in the line of duty in fighting a fire cannot recover against the property owner or a person similarly situated, such as a utility company supplying gas to said building, for injuries received while so engaged. Lunt v. Post Printing and Pub. Co., 48 Colo. 316,, 110 Pac. 203, 30 L. R. A. (N. S.) 60; Cox v. Campbell, 143 S. W. (2d) 912; City of Greenville v. Pitts, 102 Texas 1, 107 S. W. 50.

*John McGlasson,* of Waco, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

N. P. Dickens filed this suit against Texas Cities Gas Company, Lone Star Gas Company, the First National Bank of

Waco, Texas, and W. B. Dorsett, T. B. Brazelton and E. A. Flowers, the last three constituting Waco Land Trust. Dickens sought to recover judgment against the above-named defendants for personal injuries resulting to him from their alleged negligence. The case was tried with the aid of a jury. In response to special issues, the jury acquitted all the defendants of any actionable negligence, except the defendant Texas Cities Gas Company. As to this defendant, the jury found it guilty of actionable negligence in one particular. The jury also found proximate cause and damages in the sum of $20,550.00. The trial court entered judgment in accordance with the verdict. Texas Cities Gas Company appealed to the Court of Civil Appeals for the Tenth District. That court affirmed the judgment of the district court. 156 S. W. (2d) 1010. The case is before this Court on writ of error granted on application of the Texas Cities Gas Company. We shall hereinafter refer to this concern as the Gas Company.

The evidence in this case shows that on October 4, 1936, a very large and destructive fire and explosion occurred in the Liberty Building in the City of Waco, Texas, owned by the Waco Land Trust at the time of the fire and explosion in question; that such building consisted of nine stories and a basement; that the explosion and fire occurred in the basement of the building, the fire spreading to other parts of the building; that at the time such fire occurred N. P. Dickens was a fireman of the City of Waco, duly appointed and constituted; that when said fire occurred the city fire alarm was sounded; that such alarm called the city firemen, including Dickens, to go to such fire, after the first explosion, for the purpose of fighting and extinguishing such fire; that it was expected that the city firemen, including Dickens, would use the city's fire fighting equipment in fighting such fire; that Dickens, in line with his duties as a city fireman, responded to the fire alarm and went to the Liberty Building, where the fire was then raging; that when Dickens arrived at the fire he engaged with other firemen in fighting and attempting to control such fire; that at one time Dickens went into the building, but withdrew therefrom on being ordered to do so; that at the time he was injured, Dickens, with other firemen, was using a fire hose to throw or propel water into the burning building; that while so working Dickens was standing in the street, about at the edge of the sidewalk, and near an entrance of the burning building; that while standing at the point just

named, in the discharge of his duties as a city fireman, as above described, a gas explosion occurred in the building; that the force of such explosion was so great that it propelled a flash of flame or fire across the street in which Dickens was standing; that the force of such explosion was such that it threw Dickens backwards for some distance in the street, and very seriously burned and otherwise injured him.

As we understand it, the Gas Company owned a franchise to sell gas in the city. It had a gas main in the street at or near the Liberty Building. From this main the Gas Company serviced the Liberty Building with natural gas. This was done by a pipe leading from the gas main into the building. The service which the Gas Company performed for the building required that the gas be conducted therein at all times. The Gas Company, however, had a way or means constructed or prepared by which it could cut the gas off from the building in a short time. The Gas Company did not use this cut-off, and did nothing to prevent its gas from continuing to flow into the building while it was burning.

The evidence also discloses that approximately 3,000 cubic feet of gas per minute were escaping into the basement of the building; that the chief of the fire department immediately after the first explosion notified Mr. Burke, the Gas Company's superintendent, to cut off the gas; that Mr. Burke arrived at the scene of the fire a short time after being notified; that Mr. Fulton, another employee of the Gas Company, arrived shortly thereafter. There is evidence in the record that the gas was not turned off for forty-five minutes to an hour and a half after Mr. Burke's arrival, and that it would have taken only a few seconds to cut off the gas, and that both Burke and Fulton knew that gas was escaping into the basement of the building. Among other things, the jury found: (1) That the Gas Company, after learning of the fire and explosion in the Liberty Building, failed to cut off the gas within a reasonable time, to prevent it from flowing into the building; (2) that such failure was negligence; and (3) that such negligence was the proximate cause of the injury to Dickens.

There is evidence to support the jury's findings that the Gas Company failed to use ordinary care to cut off the gas that was flowing into the burning building, and that such failure was a proximate cause of plaintiff's injuries. Liability is denied on the ground that the plaintiff was a mere licensee

therein, and that under the circumstances the Gas Company owed no duty to the plaintiff to cut off the gas, though it had the means at hand to do so. In its petition for writ of error petitoner makes the following statement:

"The pleadings and undisputed evidence in this case show that:

\*     \*     \*     \*     \*     \*     \*

"(2) Texas Cities Gas Company supplied gas to the Liberty Building and Annex for fuel consumption on and prior to October 4, 1936; there is some dispute in the evidence about the ownership of the gas lines situated in the basement of the Liberty Building, but it is undisputed that Texas Cities Gas Company had the right and authority to serve the Liberty Building and Annex with gas under and by virtue of the contractual relationship between Texas Cities Gas Company and the owners of the building."

In its pleadings the Gas Company sets forth the details of its arrangements with the owners of the building, alleging that all gas pipes and other facilities within the building were the property of the owners. It specifically denies that it owned the pipes within the building, or that it had any control over them. The jury found that the owners of the building did not own the pipe which ran from the Gas Company's lines into the building; but even if the Gas Company did own this pipe, it appears that plaintiff was not injured in that part of the building which was under the Company's control.

■ The rule that there is no duty to keep premises safe for trespassers or licensees is for the protection of the property owner. So long as he creates no nuisance, he is entitled to use his property as he sees fit. He is entitled to assume that his possession will not be disturbed by outsiders. It would be placing an unreasonable burden upon him to require that he keep his premises safe for strangers who come uninvited on his land for purposes of their own. Such persons must take the premises as they find them; and if they fall into an unsuspected danger, the loss is their own. Galveston Oil Co. v. Morton, 70 Texas 400, 7 S. W. 756, 8 Am. St. Rep. 611; City of Greenville v. Pitts, 102 Texas 1, 107 S. W. 50, 14 L. R. A. (N. S.), 979, 132 Am. St. Rep. 843.

■■ However, we do not think the above rule is applicable in this case. It may be conceded that, to the extent that the Gas Company had the right to occupy the building with its pipes, it was an occupant of the building, and as to it the plaintiff was a mere licensee, and entitled to protection only against active negligence. Under such a doctrine, if plaintiff had been injured by contact with the defendant's pipes, the relation of occupant and licensee would have applied, and there would have been no liability for mere passive negligence. City of Greenville v. Pitts, supra. But here plaintiff was not injured in that part of the building or premises in the possession of the Gas Company. Let us concede that the Gas Company had the right to place its pipes in such building, and to occupy the necessary space to maintain such pipes. Unquestionably this did not give the Gas Company the right to occupy the entire building and premises surrounding the building. The Gas Company was not a lawful occupant of any portion of the building or the premises other than where it had the lawful right to place its pipes. Therefore, as to it, the plaintiff was not a licensee at the time he was injured, and the general rules of negligence apply. Gas is a highly dangerous commodity, and the Gas Company knew this. It knew that gas escaping from its pipes had already caused a very destructive explosion, and that other such explosions would likely follow if it failed to stop the flow of gas. Notwithstanding its knowledge of these facts, it failed to exercise ordinary care to cut off the gas when it was requested to do so. In our opinion it was, under the circumstances, bound to use a degree of care commensurate with the dangers involved, and it was liable in damages to the plaintiff for its failure to do so. Lane v. Community Natural Gas Co., 133 Texas 128, 134, 123 S. W. (2d) 639; San Antonio Gas & Elec. Co. v. Ocon, 105 Texas 139, 146 S. W. 162, 39 L. R. A. (N. S.) 1046; Texas Public Service Co. v. Armstrong (Tex. Civ. App.) 37 S. W. (2d) 294 (writ refused); Rowe v. Taylorville Elec. Co., 213 Ill. 318, 72 N. E. 711; McLaughlin v. Louisville Elec. Co., 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; Cooley on Torts, 1492; Annotation 29 A. L. R. 1250; 28 C. J. 594.

24 American Jurisprudence, page 696, states the rule concerning the liability of a gas company, in cases somewhat similar to this case, and which has been followed in other jurisdictions, as follows:

"Although it has been held that a gas company is not an insurer of the safety of policemen, firemen, or other public officials who are injured by leakage of gas while in the performance of their official duties or services in protecting human life or property, such companies are usually required to use more than ordinary care for the safety of public officials while the latter are performing their official duties and services, as, for instance, the highest degree of care practicable, or at least reasonable or due care. * * * If a gas company is guilty of negligence, there is no doubt that it is liable for the injury to, or the death of, a fireman, policeman, or other officer injured or killed while in the performance of his official duty or service to protect the property or lives of others."

The precise question here was decided by the Supreme Court of New Jersey in Barnett v. Atlantic City Elec. Co., 87 N. J. L. 29, 93 Atl. 108. In that case a fireman was fighting a fire in the tower of the city hall. While so engaged, he came in contact with a metal pipe charged with a deadly current of electricity which had escaped from wires installed and maintained by the defendant electric company, and was killed by an electric shock. The court held the company liable for his death, saying:

"The defendant company, however, earnestly contends that it owed decedent no duty, save that it should not wantonly or willfully cause him harm. It relies upon the rule that, in the absence of any statutory provision to the contrary, a member of a fire department, who enters a building in the exercise of his duties, is a mere licensee, under a permission to enter given by the law, and the owner or occupant of the building owes him no duty to keep it in a reasonably safe condition. 29 Cyc. 452; Kelley v. Henry Muhs Co., 71 N. J. Law, 358, 59 Atl. 23. But we think this is a misapprehension. The decedent was not upon property either owned or controlled by the defendant company, and the same rule does not apply to him as applies to one who goes upon the property of another with or without permission. The only right the defendant electric company had in the tower of the city hall was a right to place its wires and lamps in the tower. It was entitled to permanently occupy no more space for that purpose than was necessary for the lamps and wires and any devices used to maintain the wires in a safe condition. It had no right or permission to occupy the whole of the tower. * * * The fact that the decedent was a mere licensee as against the city cannot avail the defendant company, for he

was there lawfully. As we have pointed out, the case differs from where a trespasser or licensee seeks to recover of the land-owner. While a landowner may in fact reasonably anticipate an invasion of his property, yet in law he is entitled to assume that he will not be interfered with. His right to protect his possession and to use his property is paramount. * * * The general rule is that a person is liable for those results of his negligence which are reasonably to be anticipated. The exemption of the landowner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land, but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with. Guinn v. Del. & Atl Tel. Co., 72 N. J. Law, 276, 62 Atl. 412, 3 L. R. A. (N. S.) 988, 111 Am. St. Rep. 668."

Another closely analogous case is Osborne v. Tennessee Electric Power Co., 158 Tenn. 278, 12 S. W. (2d) 947. There the defendant company was warned that its transmission line was endangered by a fire in a nearby building. The fire burned the line in two, and, because of the company's delay in cutting the power off, Osborne, a fireman, upon coming in contact with the broken wire, was electrocuted. The court held that the question whether the company was negligent in failing to cut off the power should have been submitted to the jury. See also Smith v. Twin State Gas & Elec. Co., 83 N. H. 439, 144 Atl. 57, 783, 61 A. L. R. 1015; City of Shreveport v. Southwestern Gas & Elec. Co., 145 La. 680, 82 So. 785, 19 N. C. C. A. 112; Annotation 61 A. L. R. 1028.

A fire is a calamity, and the public is vitally interested in its extinguishment. It was the duty of Dickens to repair to the fire and help control it, if possible. It was also the duty of the Texas Cities Gas Company to use some degree of care to control the fire. Even if Dickens were a licensee, that would not relieve those who also owed a duty to the public from all liability. In this instance the Gas Company was called upon to shut off the gas furnished by it; and the jury, under the evidence, found it guilty of negligence in not doing so. Dickens was at the scene of the fire, performing his duties as a fireman. The representatives of the Gas Company were also there, and knew, or could have known by the exercise of any degree of diligence, that failure to cut off the gas going into the building would add to the hazard and dangers of the fire. They owed the duty to use at least ordinary care to cut off the gas. Houston

Belt & Terminal Ry. Co. v. Johansen, 107 Texas 336, 179 S. W. 853; Houston Belt & Terminal Ry. Co. v. O'Leary (Tex. Civ. App.), 136 S. W. 601 (writ refused); McAfee v. Travis Gas Corporation, 137 Texas 314, 153 S. W. (2d) 442; Smith v. Twin State Gas & Elec. Co., 83 N. H. 439, 144 Atl. 57, 783, 61 A. L. R. 1015.

In the case of Carey v. Pure Distributing Corporation, 133 Texas 31, 124 S. W. (2d) 847, 849, this Court, speaking through Mr. Justice Critz, reviewed the rules defining what evidence is necessary to justify a finding that the party committing a negligent act ought to have foreseen the consequences thereof in the light of the attendant circumstances. In the course of the opinion he summed up the holdings of this Court as follows:

"It is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen'."

This record clearly raised an issue of fact as to the negligence of the employees of the Texas Cities Gas Company in failing to shut off the gas when requested, and when they saw that not to do so would add to the dangers incident to the fire. This question was properly submitted to the jury, and the jury found against the Gas Company. The judgment of the Court of Civil Appeals, affirming the judgment of the trial court, is affirmed.

Opinion delivered January 20, 1943.

Rehearing overruled February 24, 1943.