# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-0111-CV

**The State of Texas Acting through the Texas Department of Parks and Wildlife and the Texas Department of Parks and Wildlife, Appellants**

**v.**

**Ricky Shumake and Sandra Shumake, Individually and as Personal Representative of the Estate of Kayla Shumake, Deceased, Appellees**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT
### NO. 5,278, HONORABLE GUILFORD L. JONES, JUDGE PRESIDING

## O P I N I O N

A child drowned in a man-made culvert while swimming in the Blanco River in Blanco State Park. Her parents, Ricky and Sandra Shumake, brought suit against The State of Texas, acting through the Texas Department of Parks and Wildlife, and the Texas Department of Parks and Wildlife (collectively the "Parks Department") for their daughter's wrongful death, alleging that the culvert was a special or premise defect and a nuisance or attractive nuisance. The Shumakes contended that the Texas Tort Claims Act waives sovereign immunity for their claims. *See* Tex. Civ.

Prac. & Rem. Code Ann. ch. 101 (West 1997). The Parks Department filed a plea to the jurisdiction disputing any waiver of immunity under the tort claims act for nuisance or attractive nuisance and alleging that the Recreational Use Statute, which applies to recreational activities such as swimming, removed any waiver for special or premise defects. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 75 (West 1997). The Shumakes countered that the benefits of the recreational use statute were not available to the Parks Department because it had charged them an entrance fee; therefore, they insisted that the tort claims act's waiver of immunity for special or premise defects preserved their claims. The Shumakes alternatively pled that the Parks Department had breached the standard of care it owed their daughter under the recreational use statute.

The Parks Department brings this interlocutory appeal challenging the district court's denial of its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2003). The district court found that a governmental unit does not lose the benefit of the recreational use statute when it charges a fee for entrance. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 75. The district court further found, however, that the recreational use statute is unconstitutional as applied to this case. *See* Tex. Civ. Prac. & Rem. Code Ann. chs. 101, 75. We agree with the district court that the Shumakes' payment of an entrance fee does not deprive the Parks Department of the protections of the recreational use statute. We reject the district court's holding that the recreational use statute, as applied to these facts, is unconstitutional. However, for the reasons outlined below, we affirm the denial of the plea to the jurisdiction as to the special and premise defect claim but reverse and render judgment that the Shumakes failed to establish a waiver of immunity for their nuisance or attractive nuisance claims.

2

## BACKGROUND

In June of 1997, the Shumake family visited Blanco State Park, which is owned and operated by the Parks Department. The Shumakes were allowed entrance into the park for a fee.[1] Kayla Shumake, daughter of the Shumakes, was tubing and swimming in the Blanco River when she was allegedly sucked underwater by a powerful undertow and trapped in a man-made culvert that diverted the river water under Park Road 23. Kayla Shumake drowned. The Shumakes were present during the incident but were unable to save their daughter.

After Kayla's death, the Shumakes found that the culvert opening was not protected by a grate or any other safety device. The area had no signs indicating the potential danger the culvert posed to those swimming in the vicinity. The Shumakes later learned that only days before Kayla's death, a park visitor had witnessed three individuals nearly drown in the same culvert. The visitor informed a Parks Department employee at Blanco State Park about the incidents and called the Austin office of the Parks Department to inform them of the dangerous condition.

The Shumakes sued[2] the Parks Department in a suit claiming the wrongful death of their daughter due to a special or premise defect and due to a nuisance or attractive nuisance. They pled that the Parks Department had breached both invitee and trespasser duties of care by not correcting or warning of the dangers the culvert posed. The Parks Department filed a plea to the

---

[1] The Shumakes had purchased an annual pass that allowed them entrance into any state park.

[2] The Shumakes also sued the Texas Department of Transportation, the builder of the culvert, but that suit was later dismissed.

jurisdiction claiming that it was protected from suit by sovereign immunity. The district court denied the Parks Department's plea to the jurisdiction, and this appeal followed.

**STANDARD OF REVIEW**

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993)). "A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action." *Id.* (citing *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.)). In order to prevail, the party asserting the plea must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.* Governmental immunity from suit defeats a court's subject matter jurisdiction. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo. Id.* In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case. Rather we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* "The truth of the plaintiff's allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court." *Id.* Further, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do

4

so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

## DISCUSSION

On appeal, the Parks Department argues that the district court erred by not granting its plea to the jurisdiction. It specifically contends that the district court erred: (1) by denying its plea to the jurisdiction because there is no waiver of sovereign immunity for the Shumakes' claim for nuisance or attractive nuisance; (2) by denying its plea to the jurisdiction because the Shumakes did not establish a waiver for their special or premise defect claims under the tort claims act and the recreational use statute; and (3) by holding the recreational use statute unconstitutional as applied.

Generally, the State of Texas has sovereign immunity from suit unless immunity has been waived by the legislature. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853-54 (Tex. 2002). In tort cases against the government, the legislature has waived immunity for certain torts under the tort claims act. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 101. However, when the recreational use statute applies, that waiver is limited by the standard of care the recreational use statute provides.

The Shumakes argue that the recreational use statute does not apply in this case because they paid an entrance fee to the Parks Department. The Shumakes contend that if the recreational use statute does apply, it is unconstitutional because it treats governmental landowners differently than private landowners. The Shumakes alternatively pled that the Parks Department breached the standard of care owed under the recreational use statute.

5

The Parks Department argues that the recreational use statute applies to the Shumakes' case even though it charged an entrance fee. It further contends that the recreational use statute protects landowners from liability for special or premise defects, defeating any waiver for such suits under the tort claims act.

Ultimately, our task is to determine what duty of care the Parks Department owed the Shumakes' daughter and whether the Shumakes have alleged sufficient facts that if proven, would establish a waiver of the Parks Department's sovereign immunity. If the recreational use statute provides that a governmental unit owes the same duty to a paying state-park visitor as it does to non-paying visitors, we must then determine whether the Shumakes have pled sufficient facts that their claim for special or premise defect fits within the waiver of sovereign immunity granted by the legislature through the tort claims act, as limited by the recreational use statute.

**Nuisance and Attractive Nuisance**

We will first address the easier question of whether the Shumakes have established a waiver of immunity for their nuisance and attractive nuisance claims. Based on the language in the tort claims act that "this chapter does not apply to a claim based on the theory of attractive nuisance," courts have held that the legislature has not waived sovereign immunity for claims based on attractive nuisance. Tex. Civ. Prac. & Rem. Code Ann. § 101.059; *see State of Texas v. Horton*, 4 S.W.3d 53, 54 (Tex. App.—Tyler 1999, no pet.); *Lawrence v. City of Wichita Falls*, 906 S.W.2d 113, 116-118 (Tex. App.—Fort Worth 1995, writ denied). In light of the statute and the decisions of our sister courts, we conclude that the Shumakes' claim of attractive nuisance is barred by sovereign immunity.

6

As to the Shumakes' nuisance claim, although the tort claims act does not provide a waiver of sovereign immunity for nuisance claims, "[g]overnmental entities may be liable for nuisances created or maintained in the course of non-negligent [grossly negligent] performance of governmental functions." *Texas Dept. of Trans. v. City of Sunset Valley*, 92 S.W.3d 540 (Tex. App.—Austin 2002, no pet.) (citing *Wickham v. San Jacinto River Auth.*, 979 S.W.2d 876, 880 (Tex. App.—Beaumont 1998, no pet.)). However, the exception to governmental immunity for nuisance causes of action only applies to invasions of the rights of neighboring landowners: " . . . a condition on municipal [or State] land that is dangerous or hazardous to persons coming on the land is not a 'nuisance' within the constitutionally-based 'nuisance' exception to the rule of governmental immunity." *Bragg v. City of Dallas*, 605 S.W.2d 669, 672 (Tex. App.—Dallas 1980), *motion for extension of time overruled,* 608 S.W.2d 696 (Tex. App.—Dallas 1980, no pet.). Therefore, we conclude that the Shumakes' nuisance cause of action does not come within any exception to sovereign immunity. We sustain the Parks Department's first issue and hold that the district court erred in denying the plea to the jurisdiction as to the nuisance and attractive nuisance claims.

**Duty of Care**

In its second issue, the Parks Department argues that the district court erred by denying the plea to the jurisdiction because the Shumakes did not establish a waiver for their special or premise defect claims under the tort claims act and the recreational use statute. We will divide this issue into a discussion regarding the duty of care the Parks Department owed Kayla Shumake—whether the recreational use statute is applicable in her case—and then determine what the applicable standard of care entails as applied to this case.

7

"Duty of care" is an element of all negligence cases. It refers to what measures the landowner must take to ensure the safety of the public. The duty of care that a landowner owes has traditionally depended on the circumstances under which the injured plaintiff was on the land. However, a statute's explicit expression of a prevailing duty of care will control. The Shumakes' action for wrongful death is essentially a claim of negligence. They claim that the land the Parks Department owned and operated contained a special or premise defect.

The tort claims act provides that if a claim arises from a premise defect, the governmental unit owes the claimant only the duty that a private person owes to a licensee on private property, unless the claimant has paid for the use of the premises. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). The tort claims act also states that a governmental unit has a duty to warn of special defects, "such as excavations or obstructions on highways, roads, or streets . . . ." *Id*. § 101.022(b). With regard to the premise defect standard of care, this Court, in interpreting the tort claims act, has held that a governmental unit owes *paying* entrants on government land an "invitee" duty of care. *See Clay v. City of Fort Worth*, 90 S.W.3d 414 (Tex. App.—Austin 2002, no pet.). The invitee standard of care requires a landowner to use reasonable care to reduce, eliminate, or warn of a condition posing an unreasonable risk of harm about which the landowner knew or should have known. *See State Dep't of Highways v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). The Shumakes rely on this standard of care to bring their special and premise defect claim.

However, if the recreational use statute applies, the landowner has a reduced duty of care to those who enter the property for recreation. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 75.003(g), 101.058. The recreational use statute was passed to encourage landowners to open

8

their lands to the public for recreational uses.  *See Lipton v. Wilhite*, 902 S.W.2d 598, 599 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  The statute encourages such behavior by limiting landowners' potential liability.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.002.  The statute directs that when landowners provide access to their property for recreational uses, landowners only owe the public the standard of care owed to trespassers.  *Id.*  The standard of care owed to trespassers, which will be discussed below, is the lowest standard of care a landowner can owe to those on her land.

In a controversial decision interpreting the recreational use statute, the supreme court held that governmental units that opened state land to the public did not enjoy the reduced liability afforded private landowners under the statute.  *City of Dallas v. Mitchell*, 870 S.W.2d 21 (Tex. 1994).  Instead, the supreme court ruled that the tort claims act, which imposes a higher duty of care, applied to governmental units.  *Id.*  In 1995, the legislature reacted by amending the recreational use statute to overrule the *Mitchell* decision:  "To the extent that this chapter [the recreational use statute] limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under Chapter 101 [the tort claims act], this chapter controls."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.003(g).

The recreational use statute distinguishes between landowners who charge for entry and those who do not charge for entry or charge only an insignificant amount:

> Except for a governmental unit, this chapter applies only to an owner . . . of real property who:
>
> (1)  does not charge for entry to the premises;

9

(2)  charges for entry to the premises, but whose total charges collected in the previous calendar year for all recreational use of the entire premises of the owner . . . are not more than twice the total amount of ad valorem taxes imposed on the premises for the previous calendar year; or

(3)  has liability insurance coverage . . . .

*Id.*

The Shumakes argue that the Parks Department owes a higher duty of care—that owed to an invitee—to those who pay to enter a park for recreational uses than it does to those who do not pay to enter. The most cogent of their arguments relies on their interpretation of the legislative history of section 75.003. Part of the legislative history indicates that the amendment was intended to overrule the holding in the *Mitchell* decision. House Research Org., Bill Analysis, Tex. H.B. 2085, 74th Leg., R.S. (1995). It also states: "There is no reason that a governmental unit should be more liable than a private landowner for property used for recreational purposes." *Id.* The Shumakes interpret this language to mean that the purpose of the amendment was to impose similar liability on governmental landowners and private landowners. Because private landowners lose the benefit of the recreational use statute when they collect significant entry fees, the Shumakes argue that the Parks Department should not receive the benefit of reduced liability when it charges a fee for entrance to its parks.

Determining legislative intent is the overriding goal of statutory interpretation. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov't Code Ann. § 311.011 (West 1998); *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000);

10

*Texas Workers' Comp. Comm'n v. Texas Builders Ins. Co.*, 994 S.W.2d 902, 908 (Tex. App.—Austin 1999, pet. denied). Unless a statute is ambiguous, courts abide by the clear language of the statute and enforce it as written. *Republic Bank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985).

Statutes are interpreted by considering the entire statute, not just disputed provisions. *Thomas v. Cornyn*, 71 S.W.3d 473, 481 (Tex. App.—Austin 2002, no pet.). Disputed provisions are to be considered in context, not in isolation. *See Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). When interpreting statutes, courts consider such things as the circumstances under which the statute was enacted, former statutory provisions on the same or similar subjects, and the consequences of a particular construction. *Keng*, 23 S.W.3d at 349. We should not give one provision an interpretation that is inconsistent with the other provisions of the act. *Id.*

Legislative history is some evidence of legislative intent, but as the supreme court has stated, "it is our duty to construe statutes as written, and, if possible, ascertain the Legislature's intent from the language." *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). Furthermore, in conducting a plain meaning inquiry, we are to presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect. *Whitelaw v. State*, 29 S.W.3d 129, 131 (Tex. Crim. App. 2000); *see State v. Evangelical Lutheran Good Samaritan Soc'y*, 981 S.W.2d 509, 511 (Tex. App.—Austin 1998, no pet.).

The section of the recreational use statute that distinguishes between the duties owed to paying and non-paying entrants begins with the phrase "except for a governmental unit." *Id.* The

plain meaning of this qualifying language is that the distinction between the duties owed to paying versus non-paying entrants is only applicable to private landowners. While the Shumakes' argument has logical merit, it cannot overcome this plain language of the statute.

Furthermore, the legislative history is best interpreted in a manner that supports this reading of the statute. The legislative history indicates that the purpose of the amendment was to remove circumstances in which governmental landowners were exposed to greater liability than private landowners for recreational uses on their land. However, if this Court were to accept the Shumakes' argument—that governmental units owe an invitee duty of care to all paying entrants, no matter how small the fee— then under certain circumstances, private landowners would be less liable to their guests than governmental units. For instance, if a private landowner were to charge a fee for entrance but that fee, aggregated annually, was less than twice her ad valorem taxes, then that private landowner would not lose the benefits of the recreational use statute, while a governmental unit would be held to the invitee standard of care no matter how small a fee it charged.

The Shumakes also argue that the statute can be read in such a way as to hold fee-charging governmental units to the same standard of care as fee-charging private landowners. They assert that because governmental units do not pay taxes, the measure of a significant fee could never be applied to governmental landowners. Accordingly, they argue that the language "except for a governmental unit" takes governmental landowners who charge a fee completely out of the protection of the recreational use statute. This interpretation requires us to ignore the introductory phrase "except for a governmental unit" as well as the language in section 75.003(g) that states that

12

the recreational use statute applies to governmental units, and this we may not do. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.003(c), (g).

Moreover, section 75.003(g) instructs us that "to the extent that this chapter [the recreational use statute] limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under Chapter 101 [the tort claims act], this chapter controls." *See id.*; *see also id.* § 101.058 (companion statute that gives the same directive). These sections, read together, make it unlikely that the legislature intended to take governmental units entirely out of the protection of the recreational use statute when they charge a fee.

We hold that the recreational use statute applies to all governmental units, even when they charge a fee for entrance. Our reading of section 75.003(c) is compelled by the opening phrase that the paying and non-paying distinction shall not be applied to a governmental unit. Moreover, the statutory measure of "nominal fees" has meaning only in the context of private landowners: fees will not take a landowner out of the protection of the recreational use statute unless the total fees collected in the previous calendar year exceed the ad valorem taxes assessed on the property. If we tried to apply this section to a governmental unit, in defiance of the directive that we not do so, this measure of nominal fees becomes nonsensical because governmental units do not pay ad valorem taxes.[3] The distinction between landowners who charge a significant entry fee and those who charge a nominal fee cannot be applied to governmental landowners; thus, we follow the statute's plain-language directive that section 75.003(c) does not apply to governmental units. Even though the

_____

[3] Arguably the nominal fees charged for park entrance are comparable to the nominal entry fees that may be charged by private landowners without losing the benefit of reduced liability under the recreational use statute, but there is simply no way to apply the statutory distinction between nominal fees and significant fees when the Parks Department does not pay ad valorem taxes.

13

Shumakes paid a fee to enter Blanco State Park, under the recreational use statute the Parks Department owed them only the duty owed to a trespasser.

**Duty Owed to a Trespasser**

We have determined that the Parks Department owed the Shumakes only the duty owed to a trespasser. The Shumakes alternatively pled that the Parks Department breached the trespasser duty of care owed to them. Therefore, we must determine, taking the Shumakes' factual allegations as true, whether the Shumakes have sufficiently alleged facts that establish a waiver of sovereign immunity, measured by the duty the Parks Department owed to a trespasser. *See Rylander*, 23 S.W.3d at 135.

In *City of Bellmead v. Torres*, the Texas Supreme Court noted that the duty owed a trespasser under the recreational use statute is the duty "to refrain from causing injury willfully, wantonly, or through gross negligence." 89 S.W.3d 611, 613 (Tex. 2002). In *Bellmead*, however, the plaintiffs had not pled the trespasser standard of care, so the supreme court has not had the opportunity to thoroughly discuss what that standard, in particular "gross negligence," entails in the context of the recreational use statute.

We find it instructive in our present determination, however, that when the supreme court outlined the trespasser standard in *Bellmead*, it referenced the liability owed a trespasser in the second Restatement of Torts:[4]

---

[4] In addition to the second Restatement of Torts, the supreme court also referenced two cases, *Texas Util. Elec., Co. v. Timmons,* 947 S.W.2d 191 (Tex. 1997), and *Burton Constr. & Shipbuilding Co. v. Broussard,* 273 S.W.2d 598, 603 (Tex. 1954), which will be discussed below. *See City of Bellmead v. Torres,* 89 S.W.3d 611, 613 n.13 (Tex. 2002).

14

**§ 333 General Rule**

**Except as stated in §§ 334-339**, a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care

(a) to put the land in a condition reasonably safe for their reception, or

(b) to carry on his activities so as not to endanger them.

Restatement (Second) of Torts § 333 (1965) (emphasis added).

Section 333 sets forth the "naked trespasser" standard, that is the standard of care a landowner owes a trespasser in the event she does not know that the trespasser is on her land. It is a standard that is derived from the long-held rule that a landowner does not have to anticipate trespassers or curb her behavior on her own land based on an assumption that there could possibly be a trespasser present. *See Texas Cities Gas Co. v. Dickens*, 168 S.W.2d 208 (Tex. 1943). In *Dickens*, the court said: "He [the landowner] is entitled to assume that his possession will not be disturbed by outsiders. It would be placing an unreasonable burden upon him to require that he keep his premises safe for strangers who come uninvited on his land for purposes of their own." *Id.* at 210.

Section 333 notes that the naked trespasser standard is appropriate only when the landowner is unaware that a trespasser is on her land. In the event that the landowner knows of the trespasser's likely presence, the landowner is held to a slightly higher standard of care than the naked trespasser standard. In sections 335 and 337, the Restatement sets forth the "known trespasser" standard:

**§ 335 Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area**

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

    1. (i) is one which the possessor has created or maintains and

       (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and

      (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.


**§ 337 Artificial Conditions Highly Dangerous to Known Trespassers**

A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if

(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.


Restatement (Second) of Torts §§ 335, 337 (1965) (emphasis added) (only relevant portions included).

This distinction between the duty of care owed to known and unknown trespassers is logical. If a landowner has no idea that a trespasser is on her land, she should be able to act as she

16

wishes within legal bounds. However, if she knows that trespassers frequent her land, she should either have the trespassers excluded or curb her activities to a limited degree and warn known trespassers of artificial conditions that she has created or reasonably should know are seriously dangerous, if those conditions are found in close proximity to the known trespassers. These are not unreasonable burdens.

We also look to how gross negligence has been defined in other situations to inform our understanding of its meaning in this context. Gross negligence has been defined: "Ordinary negligence rises to the level of gross negligence when it can be shown that the defendant was aware of the danger but his acts or omissions demonstrated that he did not care to address it." *Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d 245, 246-47 (Tex. 1999). The principles underlying the supreme court's definition of gross negligence in *Andrade* echo the Restatement's definition of trespasser duties to "known" or constant trespassers.

The Parks Department adamantly contends, however, that the Shumakes have not pled facts that survive its plea to the jurisdiction because they have not pled that the Parks Department's "activity or conduct" was "willful, wanton, or grossly negligent." It asserts that the Shumakes have only pled that the Parks Department was grossly negligent as to the condition of the premises and because it failed to warn or protect swimmers from the culvert. The Parks Department maintains that neither of these pleadings constitute "grossly negligent *conduct*," relying on a decision from the Amarillo Court of Appeals to substantiate its claim that the Shumakes cannot use special or premise defects, or a failure to warn, to constitute gross negligence under the recreational use statute. *See City of Lubbock v. Rule*, 68 S.W.3d 853 (Tex. App.—Amarillo 2002, no pet.).

17

In *Rule*, the plaintiffs were the parents of a twenty-month-old child who burned her hands on a hot metal slide owned by the City of Lubbock. *See id.* The plaintiffs alleged that the city knew that the slide was dangerous. *See id.* The court held that under the framework of the recreational use statute, a landowner:

> may do that which it would as long as it does not injure the visitor through willful, wanton, or grossly negligent conduct. And, in stressing the word *conduct*, we emphasize that the duty does not encompass injury arising from condition of realty but only injury arising from the activity or conduct of the occupier.

*Id.* at 858-59. The court, by stressing conduct, held that premise defects were not properly litigated under the recreational use statute because in premise defect cases, the negligent conduct of the landowner does not occur contemporaneously with the injury. *See id.* at 859.

We conclude, however, that the *Rule* court's distinction of "conduct" from "condition" is unwarranted, and its holding that "grossly negligent" conduct must occur contemporaneously with the injury to be actionable under the recreational use statute is unfounded. The Amarillo court relied on a supreme court case that did not deal with the recreational use statute and never used the phrase "grossly negligent conduct."[5] *See id.; see also Texas Util. Elec., Co. v. Timmons*, 947 S.W.2d 191 (Tex. 1997). In *Timmons,* the supreme court stated that "[t]he only duty a premises owner or occupier owes a trespasser is not to injure him willfully, wantonly, or through

---

[5] In the subsequent *Bellmead* case, the supreme court used the phrase "engage in grossly negligent conduct or act with malicious intent or in bad faith" when discussing the standard of care under the recreational use statute. *See Bellmead*, 89 S.W.3d at 613. This language does not imply, however, that the grossly negligent conduct must occur contemporaneously with the injury as the Amarillo court contends. *See City of Lubbock v. Rule*, 68 S.W.3d 853 (Tex. App.—Amarillo 2002, no pet.).

18

gross negligence." *Timmons*, 947 S.W.2d 191, 193. In *Timmons*, a teen-aged boy climbed an electrical tower and was killed when an electrical arc struck him. *See id.* It is an attractive nuisance case that does not involve recreational use or known trespassers who enter a park. *See id.*

When the supreme court provided the trespasser standard in *Timmons,* it cited *Burton Constr. & Shipbuilding Co. v. Broussard* and the second Restatement of Torts. *See id* at 193.*; see also Burton Constr. & Shipbuilding Co. v. Broussard,* 273 S.W.2d 598 (Tex. 1954); Restatement (Second) Of Torts § 333 (1965). We note that the supreme court has again, as it did in *Bellmead,* referenced the second Restatement of Torts in defining the trespasser duty of care. *See Bellmead*, 89 S.W.3d 611, 613.

In *Burton*, the plaintiff entered the defendant's property originally as a licensee,[6] but lost that status when he ventured out of the permissible area designated by the landowner. *See Burton Constr. & Shipbuilding Co. v. Broussard,* 273 S.W.2d 598, 603. The plaintiff was injured by an accidental explosion that occurred in an undesignated area. *See id.* The court held that when the plaintiff left the designated area, the plaintiff became a trespasser and was only owed the duty owed to trespassers—the duty not to injure him willfully, wantonly, or through gross negligence. *See id.* at 603. In *Burton*, the plaintiff began as a licensee; the landowner knew that the plaintiff would be present on a certain part of his land. *See id.* When the plaintiff left the designated area, the landowner no longer knew that a stranger might be on the land. The plaintiff's loss of his licensee status underscores the Restatement's distinction between known and unknown trespassers. It was not the landowner's responsibility to anticipate that the plaintiff would venture from the

---

[6] Part of the opinion deals with whether the plaintiff entered as an invitee or a licensee.

19

permissible area. When the plaintiff left his designated area, he became a "naked" or unknown trespasser. The Restatement outlines a difference, grounded in practicality and fairness, between the duty a landowner owes a known trespasser and an unknown trespasser. A paid entrant to a state park is a known trespasser.

Moreover, we note that the recreational use statute itself never mentions "conduct;" it states that the Act "shall not limit the liability of an owner . . . of real property who has been grossly negligent or has *acted* with malicious intent or in bad faith." Tex. Civ. Prac. & Rem. Code Ann. § 75.002(d) (emphasis added). One of our sister courts in Houston has decided that failure to take steps to remove or warn of a known risk constitutes gross negligence and thereby deprives the landowner of the benefit of the recreational use statute. *See City of Houston v. Cavazos*, 811 S.W.2d 231 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd). In *Cavazos*, the plaintiff, who was visiting a city park, drowned while attempting to cross a river via a concrete slab that was partially covered in water. *See id.* The court relied heavily on the fact that the city knew that numerous people had drowned at the same spot over a period of years. *See id.* The court concluded that "[t]he essence of gross negligence is the awareness of a substantial risk of harm, and a refusal to take steps to eliminate that risk, in a conscious disregard of the safety and welfare of others." *Id.* at 236. This analysis is essentially a general statement of the analysis made in the Restatement provisions that distinguish the duty owed to known trespassers from the duty owed to unknown trespassers. The Houston court concluded that "gross negligence" or "grossly negligent conduct" does not have to occur contemporaneously with the injury to be actionable under the recreational use statute. *See id.*

20

We are persuaded that the recreational use statute does not bar all premises defect claims.[7] The Restatement outlines limited exceptions to the naked trespasser duty of care that are sensible, conceptually supported by precedent and that do not conflict with the underlying policy of the recreational use statute. Only failure to remove or warn of artificial conditions of which the landowner is actually aware or the failure to remove or warn of artificial conditions that are seriously dangerous in the vicinity of the known trespassers, of which the landowner is or should be aware, may constitute gross negligence under the recreational use statute.[8]

It is clear that landowners, private and governmental alike, who open their property for recreational use know that people are entering their land. In reality, the entrants are licensees on the landowner's property. The legislature, however, has decided to impute the trespasser duty of care in these circumstances in order to encourage landowners to open their property for recreational uses. The supreme court has stated that landowners may not commit gross negligence against the public. *See Bellmead*, 89 S.W.3d 611, 613. In the case of a park that invites the public to enter for recreational purposes or charges a fee for entrance, the governmental landowner has knowledge that the public will be on the land. We rely on the second Restatement of Torts, and the supreme court's general definition of gross negligence, to impose on landowners a higher duty of care to known

---

[7] We note here that when we use the term "premise defect," we mean defect as to a condition on the land. Because we understand premise defect in the recreational use context as a defective condition on the land, we do not treat "special defect" differently than a "premise defect" as the tort claims act does; the categories of "special defect" as defined by the tort claims act are merely other defects as to the condition of the land in our analysis that undergo the same duty of care analysis that "premise defects" would. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (West 1997).

[8] We are not addressing the other sections of the Restatement dealing with known trespassers because they are not relevant to our discussion here.

21

trespassers injured by artificial conditions that pose a risk of serious bodily harm of which the landowner knows or should know. *See* Restatement (Second) of Torts §§ 335, 337; *Louisiana-Pacific Corp. v. Andrade*, 19 S.W.3d 245, 246-47.

In the Shumakes' case, the Parks Department knew that entrants tubed and swam in the river and that the artificial condition of their own making[9]—the culvert under Park Road 23—had threatened the lives of at least three people before Kayla Shumake's death. It is clear that the Shumakes have sufficiently alleged facts that, if proved, may establish gross negligence under the standard of care owed to known trespassers. Thus, the Shumakes have met their burden of establishing a waiver of immunity sufficient to defeat the plea to the jurisdiction on their premises defect claim. We overrule the Parks Department's second issue.

**Constitutionality of the Recreational Use Statute**

The Parks Department asserts in its third issue that the district court erred by finding the recreational use statute unconstitutional as applied. *See* Tex. Civ. Prac. & Rem. Code Ann. § 75.003. The district court was concerned that applying the recreational use statute to deprive plaintiffs of the right to sue under these circumstances must be unconstitutional. The district court read section 75.003(c)(3) as we do, finding that the distinction between paying and non-paying entrants does not apply to a governmental unit. However, the court found that by imposing a different duty of care on private and governmental landowners under similar circumstances, the statute must be unconstitutionally ambiguous. Moreover, this disparate treatment conflicted with

---

[9] The culvert was constructed by the Texas Department of Transportation pursuant to an agreement between the Texas Department of Transportation and the Parks Department.

the legislative history suggesting that the intent of this amended language was to avoid subjecting governmental landowners to greater liability than the liability owed by private landowners. This holding was erroneous.

Any conflict between the suggested legislative intent and the plain meaning of the statute is just that, an ambiguity that is resolved by the plain meaning of the statute. Such ambiguity does not make the statute constitutionally infirm. *See Republic Bank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d at 607.

The Shumakes seem to argue that allowing governmental landowners and private landowners to maintain a different duty of care in the same situation would violate a plaintiff's equal protection rights. We answer that the State maintains its sovereign immunity unless the legislature expressly waives it. *See IT-Davy*, 74 S.W.3d at 853-54. The legislature may waive it to any degree it wishes. The consequence of all sovereign immunity is to treat the sovereign differently than the private individual by protecting the sovereign from both suit and liability except in specifically enumerated situations where the legislature has waived sovereign immunity. An equal protection argument is misplaced in this context. We sustain the Parks Department's third issue.

## CONCLUSION

We reverse the trial court's denial of the plea to the jurisdiction as to the Shumakes' claim of nuisance or attractive nuisance and render judgment that the Shumakes failed to establish a waiver of the Parks Department's immunity for the Shumakes' nuisance or attractive nuisance claims. We hold that the recreational use statute is constitutional and applies even though the Parks Department charged an entrance fee, but we affirm the denial of the plea to the jurisdiction as to the

23

premise defect claim because the Shumakes have established a waiver of immunity by alleging facts that if proved might establish gross negligence under the duty of care owed to a known trespasser.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear:  Opinion by Justice B. A. Smith;
    Concurring Opinion by Justice Kidd

Affirmed in Part; Reversed and Rendered in Part

Filed:  December 4, 2003