Affirmed
and Memorandum Opinion filed October 8, 2009

 

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00402-CV



Pedro Santiago
Diaz Jr., as surviving child of pedro santiago diaz, Jerry Diaz, as surviving
child of Pedro Santiago Diaz, Yvette Mercado, as surviving child of Pedro
Santiago Diaz, and as adminstrator of the Estate of Pedro Diaz and MIchelle
Diaz, as surviving child of Pedro Santiago Diaz, Appellants 

v.

DTC West
Tidwell Corporation and DBA U.S. Auto Wash, Appellees 



On Appeal from
the 234th District Court

Harris County, Texas

Trial Court
Cause No. 2006-70646



 

MEMORANDUM OPINION 

Pedro
Santiago Diaz was shot and killed at a carwash at 1:30 in the morning.  The
appellants, his surviving children, brought a wrongful-death lawsuit against
the carwash, appellee DTC Tidwell Corporation d/b/a U.S. Auto Wash (DTC),
alleging premises liability.  The trial court granted DTC’s motion for summary
judgment after the carwash, which had no history of violent crime, argued it
owed no duty to Diaz to prevent an unforeseeable crime.  We affirm the
judgment.

Background

On
September 15, 2005, Diaz was at U.S. Auto Wash long after the posted hours of operation
with a blood-alcohol content of 0.14.  Around 1:30 that morning, an
unidentified person shot and killed him on the premises of the carwash.  

Appellants
sued DTC for wrongful death.  DTC denied liability and produced evidence
showing no previous history of violent crime at the carwash. [1]  Premised
on this evidence, DTC filed a traditional motion for summary judgment arguing it
owed no legal duty to prevent an unforeseeable crime to Diaz.[2]  The trial
court granted DTC’s motion for summary judgment on the basis DTC owed no duty
to Diaz, resulting in a final judgment.  In their single issue on appeal, appellants
argue the trial court erred in granting summary judgment based on the
conclusion that DTC owed no duty to Diaz.

Discussion

I.  Standard of Review

            To
prevail on a traditional motion for summary judgment, the moving party must
establish “there is no genuine issue as to any material fact and the moving
party is entitled to judgment as a matter of law.”  Tex. R. Civ. P. 166a(c); see
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  In
determining whether there is a genuine fact issue precluding summary judgment, we
take as true evidence favorable to the non-movant, and we make all reasonable
inferences and resolve all doubts in favor of the non-movant.  Nixon, 690
S.W.2d at 548–49.  A movant that conclusively negates at least one essential
element of a plaintiff’s cause of action is entitled to summary judgment on
that claim.  IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,
143 S.W.3d 794, 798 (Tex. 2004).  

Thereafter,
the burden shifts to the non-movant to produce evidence that would preclude
summary judgment.  See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678–79 (Tex. 1979).  If there is no issue of material fact, summary
judgment should issue as a matter of law.  See Haase v. Glazner, 62
S.W.3d 795, 797 (Tex. 2001).  We review the trial court’s summary judgment de
novo.  Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211,
215 (Tex. 2003).  

II. 
Duty

            It
is well established that a property owner is not an insurer of the safety of
those on his premises.[3] 
See Mellon Mortg. Co. v. Holder, 5 S.W.3d 654, 658 (Tex. 1999)
(plurality opinion).  A property owner owes a duty to persons harmed by third
party criminal acts on his property only when the risk of criminal conduct is
so great it is both unreasonable and foreseeable.  Id. at 655 (citing Timberwalk
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998)).  

To
determine foreseeability, the Supreme Court of Texas has frequently used the
following two-pronged test: (1) “the injury be of such a general character as
might reasonably have been anticipated” and (2) “the injured party should be so
situated with relation to the wrongful act that injury to him or to one
similarly situated might reasonably have been foreseen.”  Id. (quoting Nixon,
690 S.W.2d at 551); see Tex. Cities Gas Co. v. Dickens, 168 S.W.2d 208,
212 (Tex. 1943).  Only after we apply both prongs and conclude the criminal act
was foreseeable can we determine whether a duty was owed.  See Mellon Mortg.
Co., 5 S.W.3d at 657.  

When
applying the first prong, we consider the Timberwalk factors: similarity,
recency, frequency and publicity.  See id. at 656–57 (citing Timberwalk
Apartments, Partners, Inc., 972 S.W.2d at 757).  After considering those
factors, we conclude appellants have not satisfied the first prong.  See
Mellon Mortg. Co., 5 S.W.3d at 655; Timberwalk Apartments, Partners,
Inc., 972 S.W.2d at 757.  In that regard, a review of Timberwalk
Apartments, Partners, Inc. is helpful.  There, a tenant of the Timberwalk
Apartments was sexually assaulted at the complex.  Timberwalk Apartments,
Partners, Inc., 972 S.W.2d at 751.  The evidence showed no violent,
personal crime had occurred at the complex in the ten years preceding the
tenant’s assault, but it showed a sexual assault within a one-mile radius of
the complex and six assault-type crimes in neighboring apartment complexes had
occurred in the year preceding the tenant’s assault.  Id. at 752, 759. 
There was no evidence any of these crimes were ever publicized or that
Timberwalk knew or had any way of knowing about them.  Id. at 759.  Thus,
the court held the risk a tenant would be sexually assaulted was in no way
foreseeable to Timberwalk.  Id.

In
the instant case, appellants did not present evidence of any violent
crimes, much less any similar crimes, that occurred at the carwash or in
the surrounding area.  Without such evidence, we cannot conclude it might have
been foreseeable a violent crime such as murder might occur at the carwash.[4]  See
Mellon Mortg. Co., 5 S.W.3d at 657.  

We
also note that appellants’ claims fail as to the second prong as well.  In that
regard, Mellon Mortg. Co. is instructive.  See id. at 657-58.  There,
an on-duty Houston police officer pulled the victim over in her car at 3:30
a.m. and directed her to get out of her car and follow him to his squad car.  Id.
at 654–55, 657.  The victim followed the officer to a parking garage owned
by Mellon Mortgage Company (Mellon) where he sexually assaulted her.  Id.
at 654.   Although no violent crime had previously occurred at the parking
garage, summary-judgment evidence revealed 190 violent crimes had occurred in
the area surrounding the parking garage in the two years preceding the victim’s
sexual assault.  Id. at 657.  The court reasoned the violent crime in
the surrounding area, coupled with the fact Mellon knew vagrants frequented the
garage, constituted some evidence of foreseeable criminal conduct and the
possibility that a violent crime such as rape might occur.  Id.  Based
on those facts, the court held the victim satisfied the first prong.  Id.

Nevertheless,
in Mellon Mortg. Co., the court found the victim did not satisfy
the second prong because Mellon had no control over the officer, no knowledge
or reason to believe the officer would choose Mellon’s garage to assault the
victim, and no knowledge or reason to believe the victim or a person similarly
situated would be subjected to a crime on Mellon’s property.  Id. at
657–58.  The court reasoned the mere fact crimes are prevalent in
downtown Houston was not enough to predict the officer would pick Mellon’s
garage as the scene of his crime.  Id. at 658.  Because the victim
failed to establish both prongs, the court held the assault was unforeseeable
and, thus, Mellon owed her no duty.  Id. at 655.  Therefore, it was unnecessary
to determine into which of the three categories—invitee, licensee, or
trespasser—she fell.  Id. 

Similarly,
in this case, appellants have not shown that injury to Diaz or one similarly
situated might reasonably have been foreseen.  See id. at 655.  DTC had
no control over the murderer, no knowledge or reason to believe the assailant
would choose DTC’s carwash as the site of his crime, and no knowledge or reason
to believe Diaz or a person similarly situated would be murdered at DTC’s carwash. 
See id. at 657.  The mere fact crimes have generally occurred in
downtown Houston is not enough.  See id. at 658.  Thus, appellants also
have not met their burden under the second prong of our foreseeability
analysis.[5]
 See id. at 655.  

Conclusion

We
conclude DTC owed no legal duty to Diaz because the criminal conduct of a third
party was not foreseeable.    Having overruled appellants’ single issue, we
affirm the trial court’s order granting DTC’s motion for summary judgment.

 

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Justices Seymore,
Brown, and Sullivan









[1]
While the appellants offered some summary-judgment evidence of incidents in the
area such as trespassing, the need for a city wrecker to tow an abandoned
vehicle, and a disagreement between the store clerk and a customer, they
offered no proof of similar crime.





[2]
DTC also argued that the appellants lacked standing and capacity to bring
suit.  However, the trial court did not rule on these alternative arguments,
and we need not address them here to resolve the merits of this appeal.  





[3]
Diaz was murdered after the carwash’s posted hours of operation.  However,
appellants argue because the premises were lit and the machines were fully
operational, the carwash was open and running when Diaz was murdered.  Whether
the carwash was open may affect Diaz’s status as an invitee, licensee, or trespasser,
but it does not bear on the relevant inquiry of whether the crime was
foreseeable, the focus of our analysis here.  See Mellon Mortg. Co. v.
Holder, 5 S.W.3d 654, 655 (Tex. 1999).  We also note that although
appellants contend Diaz was washing his vehicle, DTC presented undisputed
summary-judgment evidence that (1) Diaz’s vehicle did not appear as though it
had been recently washed, (2) the washer wand was sitting in its carrier and
did not appear to have been recently used, and (3) the ground around the
vehicle was not wet as it would have been had someone recently washed his car.





[4]
Appellants argue DTC had a duty to discover whether criminal activity was
taking place at or near its property and DTC owed Diaz a duty to protect him
from criminal activity.  However, the Supreme Court has rejected the notion
that a landowner might have to inspect police records to determine whether his
property is in a high-crime area.  See Mellon Mortg. Co., 5 S.W.3d at
657.





[5]
Appellants suggests that a carwash should have a heightened duty to protect the
public, which should include maintaining a full-time security guard or
installing gates to prevent afterhours entry.  To support this proposal, appellants
point to a legislative bill to that effect that was introduced in 1997.  That
bill did not survive its referral to committee, however, and is not the law in
Texas.